MAE LARUE, Respondent, *v.* MAHLON TIERNAN, Defendant, Impleaded with FRANCIS BORRMAN and SARAH BORRMAN, Appellants.

MAHLON TIERNAN, Respondent, *v.* FRANCIS BORRMAN and SARAH BORRMAN, Appellants.

Third Department, July 2, 1940.

338

*Hynes & Burns* [*Ellis J. Staley* of counsel], for the appellants.

*Andrew J. Hanmer*, for the plaintiff-respondent, Mahlon Tiernan.

*Seward E. Hanmer*, for the defendant, Mahlon Tiernan.

*Charles A. Murphy* [*J. Edmund Kelly* of counsel], for the respondent, Mae LaRue.

Schenck, J.  This is an appeal by the defendants Francis Borrman and Sarah Borrman from a judgment in favor of plaintiff LaRue for damages for personal injuries and from a judgment in favor of plaintiff Tiernan for property damage.  Appellants make no claim that the verdict in the case of plaintiff LaRue is excessive, it appearing that she sustained severe injuries.

These actions arise out of an accident which occurred on a highway in the hamlet of Norfolk on October 21, 1938, at about seven-fifteen P. M.  This highway runs approximately north and south, the center consisting of a macadam pavement twenty feet wide, and at the place of the accident the highway is sixty-six feet wide,

measured from property line to property line. There is a sidewalk along the westerly side of the road. The home of plaintiff LaRue is on the west side of the road. On the night in question the defendant Sarah Borrman parked her automobile on the west side of the highway immediately in front of the LaRue home. The car was facing north with its headlights lighted. There is a sharp dispute as to whether the right wheels of the Borrman car were upon the paved portion of the road. Plaintiff Tiernan was driving south at about the time plaintiff LaRue started to walk along the west side of the Borrman car in order to pass in the rear of it and get into the front seat from the east side of the car. He testified that when about 200 feet from the scene of the accident he saw a set of headlights; he proceeded a short distance when he saw another set of headlights come out on the east side of the first headlights. He testified that he was blinded by these two sets of headlights and to avoid an accident he pulled his car to the right of the highway and struck plaintiff LaRue, who was walking southerly along the westerly side of the Borrman car. When questioned why he did not drive between the two sets of headlights, he answered that there was not sufficient room.

The real question here concerns the charge of the trial court. He stated to the jury the provisions of subdivision 6 of section 86 of the Vehicle and Traffic Law, and then charged as follows: " Now, according to the undisputed evidence, Mrs. Borrman stopped her car over alongside the left side of that boundary or curb in violation of the written command and requirement of the statute which I have read to you, and that is so, I charge you, whether she stopped her car while the wheels were partly on, while the right wheels were somewhat on, or whether all four wheels were completely off the actual middle or paved part of the roadway, or pavement consisting of the roadway itself. In other words, I say to you that on the undisputed facts of this case, Mrs. Borrman, in stopping her car wherever she did, * * * according to the evidence presented here, violated this section of the statute which I have read, and I say to you that that statute passed by the Legislature, enacted into law, was designed for general public safety upon the highway. It was designed in the interests of the safety of all persons lawfully in or upon the highway and lawfully using the highway for any purpose, and I charge you that that violation of the statute upon the part of Mrs. Borrman was a negligent act. * * * " To this portion of the charge exception was taken by defendants.

The sections of the Vehicle and Traffic Law pertinent here are as follows:

Subdivision 6 of section 86. " No vehicle shall be stopped with its left side to the curb, except in such streets as may be designated as one-way traffic streets, and where road excavation or other legalized obstruction prevent the operation of this regulation."

Subdivision 4 of section 2. " ' Curb ' shall include the boundaries of the roadway, whether marked by curbstone or not so marked."

Subdivision 3 of section 2. " ' Street ' or ' roadway ' shall include that part of the public highway intended for vehicular travel."

As I view it, this case comes squarely within the doctrine laid down in *Martin* v. *Herzog* (228 N. Y. 164). While that case was decided in 1920, it seems that the holding there has been accepted by the Court of Appeals as late as 1939. (*Tedla* v. *Ellman*, 280 N. Y. 124.) The fact that the defendant Sarah Borrman parked her car on the wrong side of the highway would not constitute negligence unless it is found that there was a causal connection between the negligence and the injury. Here we have that causal connection. In *Martin* v. *Herzog* (*supra*) the plaintiff's intestate was driving a buggy along the highway without a light as required by the statute. The defendant requested the court to charge that the absence of a light on the vehicle was *prima facie* evidence of contributory negligence. This request was refused and the jury instructed that they might consider the absence of a light as some evidence of negligence. The court also charged that " the fact that the plaintiff's intestate was driving without a light is not negligence in itself." Judge CARDOZO, writing for the court, said (at p. 168): " We think the unexcused omission of the statutory signals is more than some evidence of negligence. It *is* negligence in itself. Lights are intended for the guidance and protection of other travelers on the highway (Highway Law, sec. 329a). By the very terms of the hypothesis, to omit, willfully or heedlessly, the safeguards prescribed by law for the benefit of another that he may be preserved in life or limb, is to fall short of the standard of diligence to which those who live in organized society are under a duty to conform. That, we think, is now the established rule in this State."

I cannot find that the ruling in *Martin* v. *Herzog* was in any wise changed or modified by the case of *Tedla* v. *Ellman* (*supra*). There, two pedestrians were walking in an easterly direction on the right-hand, or southerly, side of the road in violation of subdivision 6 of section 85 of the Vehicle and Traffic Law, which provides that pedestrians shall keep to the left of the center line, or, in other words, face traffic. The court there held (O'BRIEN and FINCH, JJ., dissenting on the authority of *Martin* v. *Herzog*) that they were not guilty of contributory negligence as a matter

of law simply because the statute was violated where it appeared at the time of the accident that traffic along the northerly side of the roadway was " very heavy " while traffic on the southerly side of the roadway was light, and that it would not be held as a matter of law in choosing to walk on the roadway where the traffic was light that plaintiffs were guilty of contributory negligence and that it is unreasonable to ascribe to the Legislature an intention that pedestrians should be charged with negligence as a matter of law for acting as prudence dictates. In that case Judge LEHMAN pointed out that the Legislature when it enacted the statute presumably knew that the courts had established the general principle that omission by a plaintiff of a safeguard, prescribed by statute, against a recognized danger constitutes negligence as a matter of law.

" Then the Legislature may by statute prescribe additional safeguards and may define duty and standard of care in rigid terms; and when the Legislature has spoken, the standard of the care required is no longer what the reasonably prudent man would do under the circumstances but what the Legislature has commanded. That is the rule established by the courts and ' by the very terms of the hypothesis ' the rule applies where the Legislature has prescribed safeguards ' for the benefit of another that he may be preserved in life or limb.' In that field debate as to whether the safeguards so prescribed are reasonably necessary is ended by the legislative fiat. Obedience to that fiat cannot add to the danger, even assuming that the prescribed safeguards are not reasonably necessary and where the legislative anticipation of dangers is realized and harm results through heedless or willful omission of the prescribed safeguard, injury flows from wrong and the wrongdoer is properly held responsible for the consequent damages.

" The statute upon which the defendants rely is of different character. It does not prescribe additional safeguards which pedestrians must provide for the preservation of the life or limb or property of others, or even of themselves, nor does it impose upon pedestrians a higher standard of care. What the statute does provide is rules of the road to be observed by pedestrians and by vehicles, so that all those who use the road may know how they and others should proceed, at least under usual circumstances. A general rule of conduct — and, specifically, a rule of the road — may accomplish its intended purpose under usual conditions, but, when the unusual occurs, strict observance may defeat the purpose of the rule and produce catastrophic results."

In the case at bar it would seem that the violation of the statute by the defendant Sarah Borrman was inexcusable. Apparently she

parked on the wrong side for her own convenience. The question then is: Was her negligence the proximate cause of the accident? It seems to me that the court very carefully charged the jury on this point. He specifically charged that plaintiff LaRue could not recover damages from defendants Borrman unless she has proven as a fact that she was free from contributory negligence herself and also find that she has established as a fact by a fair preponderance of the evidence that the negligence of defendant Borrman was a proximate cause of her injuries.

The jury found that the negligence of defendant Borrman was the proximate cause of plaintiff's injuries, that Tiernan was not negligent in the operation of his car, and that there was no intervening cause to break the natural and continuous sequence of causation between defendant Borrman's negligence and plaintiff's injuries.

Defendants-appellants further contend that the only portion of the highway at the point where the accident occurred which may be considered as " intended for vehicular travel " (Vehicle and Traffic Law, § 2, subd. 3) is the twenty-foot macadam strip and that the boundaries of the roadway should be regarded as the edge of the macadam as though curbs had been placed along said edges. I am not impressed with this argument. The uncontradicted evidence showed that vehicles used not only the paved portion but the adjoining shoulders. In fact the defendant Borrman on this occasion drove her car on the unpaved portion of the highway as she had on previous occasions. The shoulder of a highway is part of the highway and may be used for travel. The provision of the statute that street or roadway shall include that part of the highway intended for vehicular travel, is obviously for the purpose of excluding sidewalks which are generally constructed within the limits of the highway. If we were to adopt the contention of defendants-appellants, certainly much confusion would arise as to what part of a highway was intended for vehicular travel. Especially would this be true in the case of country roads where the paved portion is not clearly defined.

The judgments herein should be affirmed.

Crapser and Bliss, JJ., concur; Hill, P. J., dissents in an opinion in which Heffernan, J., concurs.

Hill, P. J. (dissenting). I favor a reversal because the court charged that defendants were negligent as matter of law, and only submitted to the jury the question of liability whether that negligence was a contributing cause of the injury. The defendant Mrs. Borrman, prior to the accident, had proceeded northerly along the macadam and traveled portion of the high-

way. She turned her car to the west and her left, its right rear wheel being twelve inches and its right forward wheel eighteen inches from the edge of the macadam, and stopped it partly across a shallow ditch, with her headlights pointing in a northwest direction, diagonally away from the course of the highway. Her mission was to take her sister, the plaintiff LaRue, from her residence on the westerly side of the highway to a social gathering. As the latter came from her home and approached defendants' automobile, she was struck by a car driven by plaintiff Tiernan. He was proceeding southerly along the traveled macadam portion of the highway when, he says, that he saw the lights of defendants' car 200 feet away, but was not confused thereby; that as he traveled southerly the headlights of an approaching car confused him so that he turned to his right, left the traveled macadam portion of the highway, crossed the ditch, passed between the westerly side of defendants' automobile and a row of trees still further away from the highway, and there struck Mrs. LaRue. Both he and Mrs. LaRue have recovered judgments.

The *locus in quo* was the outskirts of the little village of Norfolk, St. Lawrence county. The street was an ordinary country highway, extending in a northerly and southerly direction, the pavement twenty feet wide, with no curb to mark its boundary. Westerly therefrom the earth sloped a distance of seven feet nine inches to the bottom of a ditch which was six and one-half inches below the westerly line of the pavement and eleven and one-half inches below the crown in the center of the traveled macadam.

The court called the jury's attention to provisions of the Vehicle and Traffic Law, which prescribe that a vehicle shall not be stopped " with its left side to the curb " (§ 86, subd. 6), and that " ' Curb ' shall include the boundaries of the roadway, whether marked by curbstone or not so marked " (§ 2, subd. 4), and that a " ' Street ' or ' roadway ' shall include that part of the public highway intended for vehicular travel " (§ 2, subd. 3).

The charge contained the following: " Mrs. Borrman stopped her car over alongside the left side of that boundary or curb in violation of the written command and requirement of the statute which I have read to you, and that is so, I charge you, whether she stopped her car while the wheels were partly on, while the right wheels were somewhat on, or whether all four wheels were completely off the actual middle or paved part of the roadway, or pavement consisting of the roadway itself. In other words, I say to you that on the undisputed facts of this case Mrs. Borrman, in stopping her car wherever she did, wherever you find that she did stop it, according to the evidence presented here, violated this section of the statute which I have read, * * * and

I charge you that that violation of the statute upon the part of Mrs. Borrman was a negligent act."

This portion of the charge is followed by a statement concerning the law of contributory negligence as applied to Mrs. LaRue, and the jury was told that if she was free therefrom, the stopping of the car at the place indicated was a proximate cause of her injuries.

Under the conditions proved, it is not clear that the stopping of the car entirely off the portion of the highway usually devoted to vehicular travel was a violation of the statutes, or that the ditch beside the macadam was a portion of the highway intended for public travel. The most favorable charge to which plaintiffs were entitled was to have the court submit to the jury as a question of fact whether the Borrman car was stopped at a place and in a manner which violated the quoted portions of the Vehicle and Traffic Law, and if the jury so determined, then, of course, the violation of the statute was a negligent act, and defendants Borrman were liable if the violation was a proximate cause of the injury.

HEFFERNAN, J., concurs.

Judgments affirmed, with costs.