ELIZABETH C. O'BRIEN, as Administratrix of JOSEPH O'BRIEN, Deceased, Appellant, v. THE STATE OF NEW YORK, Respondent.

(Claim No. 25093.)

Hill, P. J., Crapser, Heffernan and Foster, JJ., concur; Schenck, J., dissents, in an opinion.

SCHENCK, J. (dissenting). Claimant's intestate, Joseph O'Brien, was killed about midnight of September 30, 1937, while riding as a passenger in an automobile owned and driven by one Sanders. The accident occurred while the automobile in which claimant's intestate was riding was proceeding easterly along the Troy-Schenectady road, between the city of Schenectady and the city of Watervliet. The highway at the point of accident was a two-lane, concrete road, eighteen feet in width.

It is the contention of claimant that as the automobile proceeded easterly along this highway and when about 150 feet westerly of a culvert, Sanders, the driver, turned his automobile to the right to allow an automobile approaching from the east to pass; that the right wheels left the pavement and dropped onto the shoulders, and that while the driver applied his brakes and endeavored to drive the automobile to the left and upon the pavement he was unable so to do and the automobile collided with the culvert.

The shoulder on the south side of the road at the point where the accident occurred was three feet in width, although the plan for the reconstruction of this highway called for a shoulder at this point of five feet in width. The court found that from a point approximately 175 feet west of the culvert there was a difference between the level of the shoulder and the southerly edge of the concrete pavement, where they abut, varying from one and one-half inches to one and seven-eighths inches; that two feet south of the south edge of the pavement the shoulder was below the level of the pavement for depths varying from four and one-half to five and one-half inches and that at a point four feet south of the south edge of the pavement the shoulder was below the level of the southerly edge of the pavement for varying depth from seven and one-half to ten inches; that at five feet south of the south edge of the pavement the shoulder level was from twelve to thirteen inches below the level of the pavement, and at six feet the shoulder was from twelve and one-half to twenty inches below the pavement surface. The court also found that at a point two feet, nine inches southerly of the south edge of the pavement, the level of the ground was depressed below the level of the south edge of the pavement from six inches to eight inches.

The plans for the reconstruction of the road were introduced in evidence and show that the construction of the shoulder from the point where the right wheels of the car left the concrete to the culvert was to be of a width of five feet, and that the shoulder would slope at a rate of from one inch to a foot. The established form of construction adopted by the State calls for a shoulder five feet in width.

Clearly, the shoulder at the point where the accident occurred and for a considerable distance west thereof was not constructed in accordance with the State standard, nor with the plan for the reconstruction of this particular road. The court refused to find, as requested by the State, that this shoulder was generally recognized as good, and this particular one better than average, and that the depression extended only an inch or an inch and a half at the maximum.

From all of the evidence it appears that the construction and maintenance of this shoulder at the point of the accident created a dangerous condition for automobile traffic. The shoulders of a highway should be maintained in a reasonably safe condition. The shoulders of a road are constructed generally for the very purpose for which the same was used at the point of accident at the time of the occurrence. The shoulder of a road is part of the highway and the driver of a motor vehicle may use it, and is often required to use it, in passing a vehicle driven from the opposite direction. (*LaRue* v. *Tiernan*, 260 App. Div. 337; *Wager* v. *State of New York*, 257 id. 580; *Schill* v. *State of New York*, 258 id. 769.)

The courts have held that the shoulder of a highway is not constructed for general vehicular travel. On the other hand, this portion of the highway should be in a reasonably safe condition so that it could be resorted to in an emergency such as here presented, where the driver was forced off the pavement proper by an oncoming car. The State had the duty of keeping the shoulder in a reasonably safe condition " taking into account the circumstances of the road and its surroundings." (*Newell* v. *Town of Stony Point*, 59 App. Div. 237.)

It appears from the record that the proximate cause of this accident was the condition of the shoulder. If we assume that the driver of the car could have overcome the condition except for his own carelessness, it is clear that the negligence of the driver is not imputed to the claimant, who was a passenger in the car and who had not control of its operation. It is apparent that the driver, Sanders, endeavored to get back on the roadway proper by turning his wheel to the left and applying his brakes, and the court so found. The driver was unable to get back on the pavement by reason of the difference in the level of the concrete and the level of the shoulder. As a result, the car struck the culvert and overturned. The evidence demonstrates that the accident and the injuries to claimant's intestate from which he died resulted (1) from the failure of the State to construct the road in accordance with the plans, and (2) its subsequent failure to maintain it in a reasonably safe condition. Both acts constitute negligence for which the State is liable.

The decision and judgment appealed from should be reversed, new findings of fact and conclusions of law made, and an award made to the claimant-appellant in such an amount as will fairly compensate her for the pecuniary loss resulting from the death of her intestate.