STATE OF NORTH CAROLINA v. MANUEL C. CARTER, JR.

No. 7210SC487

(Filed 2 August 1972)

1. **Automobiles § 120— driving under the influence of intoxicating liquor**

    In a prosecution for driving while under the influence of intoxicating liquor, G.S. 20-138, as written at the time of the alleged offense, required the State to prove that defendant (1) drove a vehicle, (2) upon a highway of the State, (3) while under the influence of intoxicating liquor.

2. **Automobiles § 121— driving under the influence of intoxicating liquor — "driving" defined**

    The word "driving," when used in statutes prohibiting the operation of a motor vehicle while under the influence of intoxicating liquor, is almost universally construed as requiring that the vehicle be in motion.

3. **Automobiles § 127— motion for nonsuit — circumstantial evidence — sufficiency of evidence**

    State's evidence tending to show that an officer discovered defendant asleep at the wheel of his car, the car was in the right-hand

lane of travel with its motor running, there were opened and unopened containers of beer in the car, sobriety tests showed defendant to be highly intoxicated, and defendant stated to the officer that he was on his way home from a nearby town, *held* sufficient to withstand a motion for nonsuit in a prosecution for driving under the influence of intoxicating liquor since the test of the sufficiency of circumstantial evidence to withstand nonsuit is whether a reasonable inference of defendant's guilt may be drawn from the evidence.

APPEAL by defendant from *Canaday, Judge,* 7 February 1972 Session of Superior Court held in WAKE County.

Criminal prosecution for the offense of driving while under the influence of intoxicating liquor in violation of G.S. 20-138.

The only witness was Officer J. T. Ward of the State Highway Patrol. Ward testified that, in response to a call on 4 September 1971, he went to the intersection of rural roads 2352 and 2349 about two miles east of Wendell. When he arrived about 12:25 a.m., he observed a car stopped in the center of the right-hand lane of road 2352 and in front of a stop sign. The car was not there when the officer passed the intersection some 2 to 4 hours earlier. The lights on the car were off but the motor was running at a "high idle." The car windows were up. Defendant was sitting in the driver's seat. He had his knees pulled up to his chest and was asleep. An open container of beer was next to defendant. Three or four unopened containers of beer were on the left rear floorboard. In the opinion of the officer, defendant was under the influence of intoxicating liquor. Sobriety tests administered within a reasonable time thereafter tended to show that defendant was highly intoxicated when he was found in the car by Officer Ward. After being advised of his constitutional rights, defendant stated to Officer Ward that he had been to Zebulon earlier that night and was on his way home.

Defendant did not testify or offer other evidence.

The jury returned a verdict of guilty and defendant appeals from judgment of imprisonment suspended upon the payment of a fine of $250.00 and other conditions.

*Attorney General Morgan by Associate Attorney Sauls for the State.*

*Kirk & Ewell by Clarence M. Kirk for defendant appellant.*

State v. Carter

GRAHAM, Judge.

The sole question presented is whether the evidence was sufficient to withstand defendant's motion for nonsuit.

At the time of defendant's arrest, G.S. 20-138 made it unlawful for a person under the influence of intoxicating liquor "to drive any vehicle upon the highways within this State." By amendment, effective 1 October 1971, this section was rewritten. It now provides: "It is unlawful . . . for any person who is under the influence of intoxicating liquor to drive *or operate* any vehicle upon any highway or *any public vehicular area* within this State." (Emphasis added.) Operator, as defined by the Uniform Driver's License Act, includes a person in the driver's seat of a motor vehicle when the engine is running. G.S. 20-6.

[1] We are not concerned here with the question of whether, in sitting in the driver's seat of his automobile with the engine running, defendant was operating the vehicle within the meaning of G.S. 20-138 as amended. The statute, as written at the time of the alleged offense, required the State to prove that defendant (1) drove a vehicle, (2) upon a highway of this State, (3) while under the influence of intoxicating liquor. *State v. Kellum,* 273 N.C. 348, 160 S.E. 2d 76.

[2] The word "driving," when used in statutes prohibiting the operation of a motor vehicle while under the influence of intoxicating liquor, is almost universally construed as requiring that the vehicle be in motion. Annot., Driving While Drunk, 47 A.L.R. 2d 570. Our Supreme Court has held that the term "operate," when used in connection with an automobile, clearly imports motion and that holding an automobile motionless by putting one's foot on a brake pedal is not operating the automobile. *State v. Hatcher,* 210 N.C. 55, 185 S.E. 435. In the instant case the arresting officer never saw defendant's car in motion. The only evidence that defendant drove his car while under the influence of intoxicating liquor was circumstantial.

[3] The test of the sufficiency of circumstantial evidence to withstand nonsuit is whether a reasonable inference of defendant's guilt may be drawn from the evidence. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is guilty. *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679. Put

another way, the question here is whether it may be fairly and logically inferred from the circumstantial evidence offered by the State that defendant drove his vehicle on the highway and that he did so while he was under the influence of intoxicating liquor. We hold that it may.

Defendant stated to the officer that he had gone to Zebulon earlier that night and was on his way home. This statement, when considered together with evidence that defendant was sitting in the driver's seat of his car while the engine was running; that the car was stopped in its proper lane at a stop sign, and that no one else was in or near the car, would permit the jury logically to infer that defendant drove the car to the intersection where he was found by the officer.

We are of the further opinion that a reasonable inference arises from the evidence that defendant was under the influence of intoxicating liquor when he drove the car to where it was found. He was highly intoxicated when found by the officer. There was no evidence that he was otherwise physically disabled or that his car was disabled. An open container of beer was within his easy reach. Surely, if defendant had been in full control of his physical and mental faculties, he would not have parked his car, with the lights out and the engine running, on the traveled portion of the road, and then proceeded to get drunk and fall asleep. The most logical conclusion that can be drawn from the circumstances is that defendant was already under the influence of an intoxicant when he drove his car to the intersection, and that this explains why he stopped his car there and went to sleep. In speaking to similar facts in the case of *State v. Hazen,* 176 Kan. 594, 272 P. 2d 1117, the Supreme Court of Kansas stated:

"For all the record shows, the jury reached the obvious conclusion that defendant drove the vehicle to the place where it was found, and that at the time was under the influence of intoxicating liquor, on the theory that a sober person would not park his car in the middle of the highway, with the lights off, after dark."

In *State v. Haddock,* 254 N.C. 162, 118 S.E. 2d 411, our Supreme Court held facts similar to those involved here to authorize "the fairly logical and legitimate inference that defendant actually drove . . . upon a highway within the State, while under the influence of intoxicating liquor. . . ." Defend-

ant points out that in *Haddock* there was evidence that defendant's car had been driven within fifteen minutes before it was found parked partially on the shoulder of the road with defendant sitting under the steering wheel with his head drooped over. There is no evidence in the instant case that the car in question had been driven within such a short period of time. However, other factors present here tend to strengthen the inferences permissible against defendant. For instance, in explaining his presence at the intersection defendant has stated that he was on his way home. His car was stopped completely on the travel portion of the road in a rural area; whereas, in *Haddock* the defendant's car was partially on the shoulder of the road and was near a service station. Alcoholic beverages were found in this defendant's car. None was found in the car involved in the *Haddock* case.

When confronted with similar facts, courts in other jurisdictions have reached conflicting results. In our opinion, the better reasoned decisions support the position we take here. See for instance: *State v. Damoorgian,* 53 N.J. Super. 108, 146 A. 2d 550; *Noell v. State,* 120 Ga. App. 307, 170 S.E. 2d 306; *State v. Eckert,* 186 Neb. 134, 181 N.W. 2d 264; *State v. Englehart,* 158 Conn. 117, 256 A. 2d 231. Contra: *State v. DeCoster,* 147 Conn. 502, 162 A. 2d 704; *State v. McDonough,* 129 Conn. 483, 29 A. 2d 582; *State v. Hall,* 271 Wis. 450, 73 N.W. 2d 585.

No error.

Judges MORRIS and VAUGHN concur.