The STATE of North Dakota, Plaintiff/Appellee,

v.

John FUCHS, Defendant/Appellant.

Crim. No. 472.

Supreme Court of North Dakota.

June 28, 1974.

Christensen, Christensen & Baer, Bismarck, for defendant/appellant.

Lester J. Schirado, State's Atty., Mandan, for plaintiff/appellee.

KNUDSON, Judge.

This is an appeal from a verdict of a jury finding the defendant guilty of driving a vehicle upon a highway while under the influence of intoxicating liquor, in violation of § 39–08–01, North Dakota Century Code. The defendant (hereinafter Fuchs) appealed from the jury verdict.

Fuchs raised three issues:

I. That the verdict is not supported by the evidence, specifically that the State did not prove that the defendant was (a) driving his vehicle, (b) while under the influence of intoxicating liquor, and (c) upon a public highway.

II. That the court erred in permitting testimony concerning the breathalyzer test without any foundation as to the machine used being a Breathalyzer.

III. That the court erred in admitting into evidence the Breathalyzer Operational Check List (exhibit 2), over objection on the ground that there was no showing that the Check List was prepared for use by the State Toxicologist, as required by statute.

A summary of the circumstances at the time of the arrest may be derived from the testimony of the deputy sheriff, substantially as follows:

On July 11, 1973, at approximately 1:20 a. m., the deputy sheriff observed Fuchs' motor vehicle parked on the north side of Highway 10 east of Mandan, in Morton County, facing west, with its motor running, and its head lights and brake lights on. He parked his patrol car behind

Fuchs' vehicle and walked to Fuchs' vehicle. He found Fuchs sitting in the driver's seat of the vehicle, with his head laying back, with his mouth open and his arms folded across his chest. As the door was locked, the deputy knocked on the window several times over a period of about five minutes to arouse Fuchs, who appeared to be sound asleep. When Fuchs awakened he rolled down his window and, to the deputy's question as to what the problem was, replied that there was no problem, "I just had too much to drink and pulled over and slept for a while." The deputy then asked Fuchs for his driver's license and to get out of the vehicle. As Fuchs opened the door the vehicle moved backward about two inches and the deputy reached in and pulled the shift lever into the "park" position from its prior position of between "park" and "reverse." As Fuchs stepped from the vehicle he fell against the deputy, who had to stand him against the vehicle while he looked at Fuchs' driver's license. The deputy noticed Fuchs was very unsteady and wobbly and he could smell a strong odor of alcohol from him. The deputy then placed Fuchs under arrest for driving while under the influence of intoxicating liquor, read him his constitutional rights upon arrest, and took him to the Mandan police station for a breathalyzer test of the amount of alcohol in his blood.

The breathalyzer test showed there was 0.22% alcohol in Fuchs' blood. At Fuchs' request that he be given a blood test, a blood sample was taken at the Mandan Hospital and was sent to the State Toxicologist in Fargo. At trial a chemist from the office of the State Toxicologist, who had tested Fuchs' blood, testified that Fuchs' blood contained 0.23% by weight of alcohol.

█ The defendant contends that an essential element of the offense is that the vehicle must be in motion, and that since in this case the vehicle was parked the State has failed to prove an essential element of the offense. But it has been held that the driving of a vehicle while under the influence may be established by circumstantial evidence, and that a person found in a similar situation as Fuchs has been found guilty of driving a vehicle while intoxicated, when the vehicle was not moving at the time of the arrest.

In State v. Eckert, 186 Neb. 134, 181 N. W.2d 264 (1970), the Supreme Court of Nebraska held, at syllabus 2:

"In a prosecution for operating a motor vehicle while under the influence of intoxicating liquor, the operation of the motor vehicle is an element of the offense and may be established by circumstantial evidence."

The circumstances in the *Eckert* case were, as quoted from page 267 of 181 N.W.2d:

". . . that defendant's motor vehicle was found parked in the right-hand lane of a public highway approximately 8 miles north of Grant, Nebraska. Defendant was slumped over the steering wheel in a drunken stupor. He was alone in the motor vehicle and no other person was in proximity to the motor vehicle. No liquor, nor liquor containers, were found in or about the motor vehicle. The motor vehicle was not moving and the engine was not running. Defendant stated that he had no recollection of what happened from the time he left Madrid until he was aroused by law enforcement officers at the time of his arrest. These facts are not disputed. The evidence is sufficient, although circumstantial, to sustain the finding that defendant operated his motor vehicle on a public highway while under the influence of intoxicating liquor."

In State of Oregon v. Brown, 485 P.2d 444 (Or.App.1971), where the defendant's automobile was found parked "alongside the main travel portion" of a highway, the Court said, at page 446:

"As we understand defendant's third assignment of error, he is contending that proof of the element of 'driving on

a public highway' in the offense of driving while under the influence of intoxicating liquor cannot be inferred from 'merely finding the defendant in a car that is parked at night with its lights and engine off.' He is also contending that commission of the crime charged was not established to a moral certainty and to the exclusion of every other reasonable hypothesis before defendant's admissions were received in evidence. These contentions are without merit. The officers found defendant slumped behind the wheel of a car parked alongside the highway. In addition the record shows that the keys were in the ignition and there was no other person in the vicinity. The officers testified that the hood of the car was still warm. This was sufficient evidence, apart from defendant's admissions, from which a court or jury could infer beyond a reasonable doubt that the defendant had driven the automobile on a public highway to the place where it was parked shortly before the officers arrived on the scene."

For a similar holding, see State v. Carter, 15 N.C.App. 391, 190 S.E.2d 241 (1972), and cases cited therein.

■ In the present case Fuchs was found sitting in the driver's seat at the wheel of the vehicle, with the engine running, the head lights and brake lights on, the car doors locked, and with no other person being in proximity, the evidence was sufficient from which a jury could infer beyond a reasonable doubt that he had driven the vehicle to the place where it was parked on the north side of the highway.

■ The defendant contends that there is no evidence as to where the vehicle was parked in relation to the highway. However, this contention is without merit. The testimony of the deputy sheriff is that Fuchs' vehicle was parked on the north side of the highway, and that he parked the patrol car behind Fuchs, from which the jury could infer that Fuchs was parked on the shoulder of the highway. The shoulder is considered to be a part of the highway. LaRue v. Borrman, 260 App. Div. 337, 22 N.Y.S.2d 209, 213 (1940).

■ The chemical tests disclosed that Fuchs was presumptively intoxicated. The breathalyzer test shows Fuchs' blood alcohol to be 0.22%, and the blood test, taken at Fuchs' request, conducted by and testified to by a representative of the State Toxicologist, showed his blood alcohol to be 0.23% by weight. All of the testimony and both tests show that Fuchs was under the influence of intoxicating liquor.

Section 39–20–07, subsections (3) and (5), N.D.C.C., provides that:

"Upon the trial of any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the person's blood at the time of the act alleged as shown by a chemical analysis of his blood, breath, saliva or urine is admissible. For the purposes of this section:

\*   \*   \*   \*   \*   \*

"3. A person having, at that time, ten-hundredths of one percent or more by weight of alcohol in his blood shall be presumed to be under the influence of intoxicating liquor;

\*   \*   \*   \*   \*   \*

"5. The results of such chemical analysis shall be received in evidence when it is shown that the test was fairly administered, provided that a test of a person's blood, urine, breath or other bodily substance and the result thereof is further shown to have been performed according to methods and/or with devices approved by the state toxicologist and by an individual possessing a certificate of qualification to administer the test issued by the state toxicologist. The state toxicolo-

gist is authorized to approve satisfactory techniques, devices and methods of chemical analysis, and to determine and certify the qualifications of individuals to conduct such analysis. The state toxicologist may appoint, train, certify, and supervise field inspectors of breath testing equipment and its operation, and the inspectors shall report the findings of any inspection to the state toxicologist for appropriate action."

There is ample evidence to support the charge that Fuchs was under the influence of intoxicating liquor other than the chemical tests made to determine the alcoholic content of Fuchs' blood, from which the presumption arose that Fuchs was under the influence of intoxicating liquor. The deputy sheriff testified that he found him in an intoxicated condition at the scene of the arrest. He testified that Fuchs fell into him when Fuchs got out of his car, and the deputy also testified that Fuchs smelled of alcohol and was unsteady on his feet. Mr. Quinn, the police officer who gave the breathalyzer test to Mr. Fuchs, testified that from his observation of Fuchs' actions at the Mandan police station he noticed that Fuchs had an unsteady walk, he walked into a chair, and after taking the breathalyzer test he started to walk into the chair again and he had to physically hold him by the shoulder and help him back to his seat. Mr. McClure, the jailer, testified that Fuchs, when taking the coordination test, staggered in taking the heel-to-toe test, he missed his nose on the finger-to-nose test, "and he performed pretty good the coin test." From that, each determined that Fuchs was under the influence of alcoholic beverage and "he looked pretty well intoxicated."

■ Our conclusion herein as to the application of the rules as to circumstantial evidence at the trial level is supported by previous opinions of this court. In State v. Steele, 211 N.W.2d 855 (N.D.1973), we held, in syllabus 14:

"It is not the function of the supreme court to substitute its judgment for that of the jury but instead only to examine the evidence presented in order to determine whether it supports the verdict and whether the defendant received a fair trial."

And, in State v. Kaloustian, 212 N.W.2d 843, 845 (N.D.1973), we said:

"In State v. Miller, 202 N.W.2d 673 (N.D.1972); State v. Champagne, 198 N.W.2d 218 (N.D.1972); and State v. Carroll, 123 N.W.2d 659 (N.D.1963), we pointed out that the rule as to circumstantial evidence, at the trial level, is that such evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction."

See also the recent decision of this court, State v. Neset, 216 N.W.2d 285 (N.D. 1974), wherein we affirmed that we do not substitute our opinion for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants conviction.

In the instant case, we believe that the evidence excludes all reasonable hypotheses of innocence on the part of Fuchs, and that the determination of the jury with respect to the inferences drawn should not be overturned by this court, as those inferences tend to prove guilt on the part of Fuchs and fairly warrant his conviction.

With regard to the defendant's other two issues, one, that the testimony concerning the breathalyzer test was improperly admitted; and the other, that the Breathalyzer Operational Check List was improperly admitted, we are of the opinion that there was not sufficient foundation to support their admission into evidence. Our deci-

sion with respect to these two issues is controlled by our case of State v. Salhus, 220 N.W.2d 852 (N.D.1974).

Fuchs objected to the admission of the testimony on the breathalyzer test, including testimony on the known standard solution, and to the admission of the breathalyzer check list, on the ground that no proper foundation was laid. The only foundational material offered by the State was the testimony of the testing officer that the check list and known solution ampoules came from the office of the State Toxicologist and were therefore approved methods and devices under § 39–20–07, N.D.C.C.

In the instant case there is no contention that the test was not fairly administered or that it was not administered by a person qualified under the statute. Only the hearsay testimony to show official approval of the breathalyzer, and of the check list, and of the known chemical solution are objected to as being admitted without proper foundation.

Admissible testimony is needed to establish the foundation of approval by the state toxicologist required by § 39–20–07, N.D.C.C. In State v. Miller, 146 N.W.2d 159 (N.D.1966), the ampoules were objected to as to lack of foundation for admission. In *Miller*, the foundation was established by the state toxicologist, an acknowledged expert, and the ampoules were held properly admitted. In the absence of the presence and testimony of the toxicologist, certified copies of records establishing these facts could have been submitted pursuant to Rule 44(a)(1) of the North Dakota Rules of Civil Procedure. We therefore hold that it was error to admit the contested evidence without proper foundation.

We believe, however, that the admission of this evidence by the trial court was not so prejudicial to Fuchs as to deprive him of a fair trial. Fuchs requested that a blood test be administered and, at trial, the results of said blood test were admitted, after being testified to by a chemist from the office of the state toxicologist who had analyzed the blood sample from Fuchs. The blood test showed that Fuchs' blood contained 0.23% by weight of alcohol. Under the interpretation of 39–20–07(3), N.D.C.C., this was enough alcohol to establish a presumption that Fuchs was under the influence of intoxicating liquor and it was sufficient to show that he was in violation of § 39–08–01, N.D.C.C.

The error in admitting the breathalyzer evidence was, therefore, harmless, since even if that evidence had been properly admitted it would have been only cumulative to the blood test evidence.

We hold that there is sufficient relevant and admissible evidence in this case to support the verdict, and it is, accordingly, affirmed.

ERICKSTAD, C. J., and PAULSON, VOGEL and TEIGEN, JJ., concur.