STATE OF NORTH CAROLINA v. OTIS JUNIOR MABE, DEFENDANT

No. 8621SC978

(Filed 5 May 1987)

1. **Automobiles § 122— impaired driving—ramp in parking lot—public vehicular area**

    A ramp for wheelchairs or handicapped persons in the parking lot of a motel was a part of a "public vehicular area" within the meaning of N.C.G.S. § 20-4.01(32) so that defendant could properly be convicted of impaired driving in violation of N.C.G.S. § 20-138.1.

2. **Automobiles § 127.2— impaired driving—defendant behind wheel of car with motor running—sufficiency of evidence**

    Evidence was sufficient to support a finding that defendant was in actual physical control of a vehicle, and the trial court properly denied defendant's motion to dismiss in an impaired driving prosecution, where the evidence tended to show that defendant was seated behind the steering wheel of a car which had its motor running, and, when aroused, defendant himself turned off the car's engine.

APPEAL by defendant from *Morgan, Judge.* Judgment entered 8 July 1986 in Superior Court, FORSYTH County. Heard in the Court of Appeals 11 February 1987.

Defendant was convicted of impaired driving in violation of G.S. 20-138.1. At approximately 2:15 a.m. on 9 March 1986, Deputy Robert Hunt of the Forsyth County Sheriff's Department was called to the Econo Lodge Motel in Winston-Salem. When Deputy Hunt arrived, he observed a car parked directly in front of the motel entrance on an inclined ramp that extended from the motel door into the parking lot. Deputy Hunt approached the car and saw the defendant, alone in the vehicle, seated in the driver's seat

State v. Mabe

with his head slumped over the steering wheel. The car engine was running and the defendant appeared to be asleep or passed out.

Deputy Hunt called to the defendant through the closed car window. When the defendant did not respond, the deputy opened the car door and spoke to him several more times. When the defendant still did not respond, the deputy reached into the car and shook him. The defendant then awoke and turned off the car engine.

Deputy Hunt smelled a strong odor of alcohol and observed a fifth-size whiskey bottle on the front floorboard of the passenger side of the car. The bottle was one-third full and, in the deputy's opinion, its contents smelled like whiskey.

Deputy Hunt asked defendant to step out of the car. He advised him of his rights and informed him that he was being charged with impaired driving. Deputy Hunt observed the defendant walk from his car to the patrol car. He described defendant's walk as "staggered," "swayed" and "kind of wobbly." Based upon all these observations, Deputy Hunt testified that in his opinion "[t]he defendant had consumed a sufficient amount of alcoholic beverage to appreciably impair his mental and physical abilities."

A chemical analysis of defendant's breath was administered by Sergeant G. W. Cooper, a licensed breathalyzer operator with the State Highway Patrol. Sergeant Cooper reported that the test results were "1400 parts per 210 milliliters of breath." In his opinion, based upon his observation of defendant, the defendant "had consumed sufficient quantity of an impairing substance to such an extent so that his physical faculties were appreciably and noticeably impaired."

The defendant presented no evidence. His motions to dismiss the charge were denied. The jury returned a verdict of guilty of impaired driving on the basis of driving after consuming alcohol when defendant had an alcohol concentration of 0.10 or more. G.S. 20-138.1(a)(2). The trial court imposed Level Two punishment and sentenced defendant to 12 months in the custody of the Department of Corrections, suspended upon the condition that defendant serve a term of imprisonment of seven days and two weekends. Defendant appeals.

*Attorney General Thornburg by Assistant Attorney General W. Dale Talbert for the State.*

*Jerry Rutledge for defendant-appellant.*

EAGLES, Judge.

I

[1]   Defendant assigns error to the trial court's denial of his motion to dismiss on the ground that the State's evidence was insufficient as a matter of law to permit a finding that the offense occurred upon a "public vehicular area" as defined in G.S. 20-4.01(32). We disagree.

A "public vehicular area" is defined in G.S. 20-4.01(32) (Supp. 1985) as "[a]ny area within the State of North Carolina that is generally open to and used by the public for vehicular traffic, including by way of illustration and not limitation any drive, driveway, road, roadway, street, alley, or parking lot upon the grounds and premises of:

> b. Any service station, drive-in theater, supermarket, store, restaurant, or office building, or any other business, residential, or municipal establishment providing parking space for customers, patrons, or the public";

Defendant contends that because his car was stopped on a wheelchair or handicapped pedestrian ramp, there is no evidence that the offense occurred in a "public vehicular area." The evidence shows that the back tires of defendant's car were in the parking lot proper, the front tires and most of defendant's car were on the inclined ramp. There were no available parking spaces in the parking lot that night. Photographs show that the ramp is located directly in front of the motel door next to a parking space designated as "Handicapped." The ramp is wide enough to accommodate a large automobile and extends, at a slight angle, from the sidewalk out into the parking lot the length of a parking space. There is no handrail or partition of any kind which separates the inclined ramp from the parking lot itself.

The Econo Lodge Motel parking lot, including its designated parking spaces, is a "public vehicular area" as defined in G.S. 20-4.01(32). The handicapped or wheelchair ramp is part of the

parking lot. While the ramp itself is not intended to be used as a parking space or for vehicular traffic, it is part of the "public vehicular area." The statute states that "[t]he term 'public vehicular area' shall not be construed to mean any private property not generally open to and used by the public." G.S. 20-4.01(32). Here, the ramp is part of the parking lot, a public vehicular area and the ramp is generally open to and used by the public. By way of analogy, courts have universally held that a "street" includes not only the roadway and travelled portions but also the sidewalks. *State v. Perry*, 230 N.C. 361, 53 S.E. 2d 288 (1949) (Barnhill, J., concurring). "The sidewalk is simply a part of the street which the town authorities have set apart for the use of pedestrians." *Id.* at 364, 53 S.E. 2d at 290. Likewise, the wheelchair or handicapped ramp is part of the parking lot which the motel owner has set apart for the use of pedestrian customers and patrons. "To hold otherwise would be to say that an intoxicated person may operate his motor vehicle down a crowded sidewalk with impunity insofar as the Motor Vehicle Law is concerned." *Id.*

We believe the legislature clearly intended to protect persons within public parking lots from the dangers posed by others who drive there while impaired. To exclude a handicapped ramp which is part of the public parking lot from the definition of "public vehicular area" would be contrary to that legislative purpose. Statutory construction which operates "to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." *State v. Carawan*, 80 N.C. App. 151, 153, 341 S.E. 2d 96, 97, *disc. rev. denied*, 317 N.C. 337, 346 S.E. 2d 141 (1986).

Accordingly, we hold that the evidence was sufficient to permit a finding that the handicapped or wheelchair ramp upon which defendant's car had been stopped was part of a "public vehicular area" within the meaning and intent of that phrase as used in G.S. 20-4.01(32). The trial court correctly denied defendant's motion to dismiss since there was evidence to support a finding that defendant's car was within a public vehicular area.

## II

[2] Defendant also assigns error to the trial court's denial of his motion to dismiss on the ground that the State's evidence did not establish that defendant "operated" a motor vehicle because

defendant did not have "actual physical control of the automobile."

G.S. 20-138.1(a) provides that:

A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State: (1) While under the influence of an impairing substance; or (2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.10 or more.

The statute prohibits "driving" a motor vehicle under the conditions set out and we have held that one "drives" a motor vehicle within the meaning of G.S. 20-138.1 "if he is in actual physical control of a vehicle which is in motion or which has the engine running." *State v. Fields*, 77 N.C. App. 404, 406, 335 S.E. 2d 69, 70 (1985); *see* G.S. 20-4.01(7) and (25).

The evidence was plenary that defendant was seated behind the steering wheel of a car which had its motor running. This evidence alone brings the defendant within the purview of the statute as to operation of the vehicle. *See State v. Turner*, 29 N.C. App. 163, 223 S.E. 2d 530 (1976) (where defendant found in a stopped automobile with the engine running, slumped over the steering wheel and leaning toward the door) and *State v. Carter*, 15 N.C. App. 391, 190 S.E. 2d 241 (1972) (where defendant found in parked car with engine running, seated in the driver's seat, knees pulled up to his chest and asleep). Further, the evidence here shows that when aroused, the defendant himself turned off the car's engine. The evidence was sufficient to support a finding that the defendant was in actual physical control of the vehicle and the trial court properly denied defendant's motion to dismiss.

### III

Defendant assigns error to the trial court's refusal to instruct the jury that "a person in a deep sleep sitting behind the steering wheel of a car is not in actual physical control of the car." We disagree.

It is the duty of the trial judge to "declare and explain the law arising on the evidence relating to each substantial feature of the case." *State v. Everette*, 284 N.C. 81, 87, 199 S.E. 2d 462, 467

(1973); G.S. 15A-1232. Defendant's requested instruction does not accurately declare and explain the law arising on the evidence of this case. The trial court properly instructed the jury that they must find that the defendant was in actual physical control of a vehicle in motion or which has the engine running. This assignment is without merit and is overruled.

The trial court properly denied defendant's motion to dismiss and defendant received a fair trial free from prejudicial error.

No error.

Judges WELLS and GREENE concur.