IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-494

No. COA21-359

Filed 19 July 2022

Wake County, No. 20 CVS 13930

SCHOOLDEV EAST, LLC, Petitioner,

v.

TOWN OF WAKE FOREST, Respondent.

Appeal by plaintiff from order entered 14 April 2021 by Judge Vinston M. Rozier, Jr. in Wake County Superior Court. Heard in the Court of Appeals 26 January 2022.

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Tobias R. Coleman, J. Mitchell Armbruster, and Patrick D. Wilson, and Stam Law Firm P.L.L.C., by Paul Stam and R. Daniel Gibson, for Petitioner-Appellant.*

*Wyrick Robbins Yates & Ponton LLP by Samuel A. Slater for Respondent-Appellee.*

CARPENTER, Judge.

¶ 1     Appeal by Schooldev East, LLC ("Petitioner") from the Wake County Superior Court's order (the "Order") entered 14 April 2021, which affirmed the Town of Wake Forest's (the "Town") 20 November 2020 orders denying Plaintiff's applications for major site plan and major subdivision approval to build a charter school. On appeal, Petitioner argues the Town's "sidewalk requirements violate N.C. Gen. Stat. § 160A-

307.1[.]" Alternatively, Petitioner contends it met the applicable local requirements, and therefore, the superior court erred in denying its applications. After careful review, we conclude Petitioner failed to present competent, material, and substantial evidence to establish a *prima facie* case for entitlement of the permits because the evidence did not satisfactorily show Petitioner met the Town's ordinances requiring pedestrian connectivity to surrounding residential areas and accessibility by schoolchildren to the school. Accordingly, we affirm the Order.

## I. Factual & Procedural Background

¶ 2 This case arises out of Petitioner's applications for major site plan and major subdivision plan approval to build a kindergarten through twelfth-grade charter school, to be named Wake Preparatory Academy ("Wake Prep"). Petitioner contracted with Jane Harris Pate ("Pate") to purchase approximately 35 acres (the "Property") of Pate's undeveloped, 68.29-acre tract of real property located on Harris Road, on which Petitioner planned to build Wake Prep. At all relevant times, the Property was located in the Town's rural holding zoning district ("RD District") and within the Town's planning jurisdiction.

¶ 3 On 4 November 2019, Petitioner filed a major subdivision plan permit application (the "Subdivision Plan Application") to subdivide Pate's property into three parcels, and a major site plan permit application (the "Site Plan Application") (together, the "Applications") seeking approval to construct Wake Prep on the middle

parcel, or the Property.

On 3 September 2020, Petitioner presented evidence in support of its applications to the Town's Planning Board and Board of Commissioners (the "Board") in a quasi-judicial joint public hearing pursuant to the Wake Forest Unified Development Ordinance (the "UDO"). According to Sections 15.8.2 and 15.9.2 of the UDO,

> The Board of Commissioners shall approve, deny or approve with conditions the Site Master Plan [and the Subdivision Master Plan]. No Site Master Plan [or Subdivision Master Plan] approval shall be granted unless it complies with the following findings of fact:
>
> (1) The plan is consistent with the adopted plans and policies of the town;
>
> (2) The plan complies with all applicable requirements of this ordinance;
>
> (3) There exists adequate infrastructure (transportation and utilities) to support the plan as proposed; and
>
> (4) The plan will not be detrimental to the use or development of adjacent properties or other neighborhood uses.

During its 20 October 2020 meeting, the Board unanimously denied both of Petitioner's applications based on its determination that Petitioner failed to offer sufficient evidence to satisfy the findings of fact as required by UDO Sections 15.8.2 and 15.9.2. On 17 November 2020, the Board entered its written decisions denying

the Applications. The denial was based on a determination that the evidence did not satisfy certain policies of the Town's Community Plan and a Town zoning ordinance. The relevant Community Plan policies provide:

> Policy S-1: ADVANCED PLANNING FOR THE LOCATION OF NEW PUBLIC SCHOOLS serving Wake Forest should be a joint effort between the Wake County School Board and the Town. School locations should serve to reinforce desirable growth patterns rather than promoting sprawl. New elementary school locations should be viewed as a CORNERSTONE OF THE NEIGHBORHOODS they are intended to serve.
>
> . . . .
>
> Policy S-3: School campuses shall be designed to allow safe, PEDESTRIAN ACCESS FROM ADJACENT NEIGHBORHOODS. Transportation facilities within 1.5 miles of all public schools shall be a priority for construction of sidewalks, bike paths and pedestrian trails.
>
> . . . .
>
> Policy S-5: THE CO-LOCATION AND JOINT DEVELOPMENT of school facilities in conjunction with other community facilities and services shall be encouraged. This policy shall be especially applicable to schools co-located with park and recreation facilities.

¶ 6      With respect to the Site Plan Application, the Board found Petitioner submitted insufficient evidence regarding findings of fact 1, 2, and 4. Specifically, the Board found there was insufficient evidence to support: finding of fact 1 because the evidence submitted failed to meet policies S-1 and S-3 of the Town's Community

Plan; finding of fact 2 because the Site Plan Application failed to comply with a portion of UDO Section 3.7.5(B)(2), which requires "[c]onnectivity (vehicular and pedestrian) to surrounding residential areas"; and finding of fact 4 because the evidence submitted failed to meet policies S-1, S-3, and S-5 of the Town's Community Plan.

¶ 7    For the Subdivision Plan Application, the Board found that Petitioner submitted insufficient evidence regarding finding of fact 2 because the Subdivision Plan Application failed to comply with UDO Section 3.7.5(A), which states schools in the RD District are:

> [t]o encourage walking and bicycle accessibility by schoolchildren to schools, [by] requir[ing] the applicant to demonstrate how such accessibility can be achieved, given the low density nature of this district. Accommodation may include the construction of additional off-premise sidewalks, multi-use trails/paths or greenways to connect to existing networks.

¶ 8    On 11 December 2020, Petitioner filed a petition for writ of certiorari pursuant to N.C. Gen. Stat. § 160A-393, recodified as N.C. Gen. Stat. § 160D-1402, in the Wake County Superior Court. Petitioner argued in its petition: (1) N.C. Gen. Stat. § 160A-307.1 prohibits the Town from denying the Applications for failing to meet the Town's policies requiring school connectivity to adjoining neighborhoods; (2) the Town cannot deny the Subdivision Plan Application because it found the Subdivision Plan Application complied with all provisions of the applicable subdivision ordinances; and

(3) Petitioner presented sufficient evidence to establish it is entitled to the permits, and there was no competent evidence in the record to support denial.

¶ 9        On 14 December 2020, the Clerk of Superior Court for Wake County issued a writ of certiorari. On 24 February 2021, the Honorable Vinston M. Rozier, Jr., judge presiding, heard arguments from the parties. On 14 April 2021, Judge Rozier entered an Order in which he denied Petitioner's request to reverse the Board's decision and affirmed the Board's decision. Judge Rozier made the following pertinent conclusions of law:

> (21)    As to the interpretation of N.C. Gen. Stat. § 160A-307.1, the Court proceeds de novo. The Board of Commissioners properly analyzed the scope of a novel North Carolina Statute and determined that it did not preempt Town plans and ordinances requiring Schooldev to demonstrate pedestrian and bicycle connectivity.

> (22)    Having established that N.C. Gen. Stat. § 160A-307.1 does not prohibit towns from regulating pedestrian and bicycle connectivity in relation to proposed new schools, the Court next reviews the whole record to determine if the applicant submitted sufficient evidence to establish a *prima facie* case for entitlement to the requested permits by satisfying the Town's plans and ordinances requiring pedestrian and bicycle connectivity.

> (23)    A review of the whole record shows that Schooldev presented sufficient, competent evidence that its Site Plan Application will not be detrimental to the use and development of adjacent properties, as required in Finding 4 of Section 15.8.2 of the UDO.

(24)    A review of the whole record then shows that Schooldev's Site Plan Permit Application does not satisfy the Town's plan and ordinances requiring pedestrian and bicycle connectivity.

(25)    As a result, the Board of Commissioners properly denied both the Site Plan Application and the Subdivision Application.

On 20 April 2021, Petitioner filed notice of appeal to this Court.

## II.    Jurisdiction

This Court has jurisdiction to address Petitioner's appeal from the Wake County Superior Court's Order entered upon review of a quasi-judicial decision by a municipality pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2021).

## III.    Issues

The issues before this Court are whether: (1) Petitioner's appeal is moot considering Wake Prep has amended its charter application and will no longer operate the school in which Petitioner proposes to develop; (2) N.C. Gen. Stat. § 160A-307.1 prohibits the Town from using local pedestrian and bicyclist connectivity and accessibility requirements to deny Petitioner's development permits for a charter school; (3) the superior court erred in applying the whole record standard of review in determining whether Petitioner established a *prima facie* case for entitlement to the permits at issue; and (4) the superior court erred in holding Petitioner did not present sufficient evidence to establish a *prima facie* case for entitlement to its

requested development permits for a charter school.

## IV. The Town's Motion to Dismiss Appeal as Moot

¶ 13 As an initial matter, we consider the Town's motion to dismiss filed on 23 September 2021 pursuant to Rule 37 of the North Carolina Rules of Appellate Procedure. *See* N.C. R. App. P. 37(e)(2) ("After the record on appeal has been filed, an appellant . . . may move the appellate court in which the appeal is pending, prior to the filing of an opinion, for dismissal of the appeal."). The Town contends the case is moot because "Schooldev . . . renounced its legal right to operate a charter school in [Wake Forest]" after filing its notice of appeal. Petitioner argues this Court should deny the Town's motion to dismiss because Petitioner can establish standing in this case, and the case is not moot because "a court can still grant [it] effectual relief." Petitioner also clarifies in its response to the Town's motion to dismiss that it only develops schools. After developing the schools, Petitioner then seeks a separate entity to operate the school after the entity leases or buys the property that Petitioner has developed for school use.

¶ 14 Our Supreme Court has held:

> [w]henever, during the course of litigation it develops that the relief sought has been granted or that the questions originally in controversy between the parties are no longer at issue, the case should be dismissed, for courts will not entertain or proceed with a cause merely to determine abstract propositions of law.

*In re Peoples*, 296 N.C. 109, 147, 250 S.E.2d 890, 912 (1978), *cert. denied*, 442 U.S. 929, 99 S. Ct. 2859, 61 L. Ed. 2d 297 (1979). "A case is 'moot' when a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy." *Chavez v. McFadden*, 374 N.C. 458, 467, 843 S.E.2d 139, 146 (2020) (citations omitted).

¶ 15 In the instant case, Petitioner sought site plan and subdivision permits from the Town. The record does not tend to show Petitioner applied for the establishment of the charter school pursuant to Chapter 115C of the North Carolina General Statutes; rather, Petitioner applied only for development permits under the Town's UDO. Based on the evidence before us, it was a separate entity—Wake Preparatory Academy—that sought the charter applications, which would allow it to "operate the school." *See* N.C. Gen. Stat. § 115C-218.5(a)(2) (2021). Thus, the Town's contention that Petitioner "renounced its legal right to *operate* a charter school in the Town," which rendered the case moot is without merit. (Emphasis added).

¶ 16 Furthermore, the Town provides no support to its argument that Petitioner was required to have an approved charter application from the State Board of Education before the Town could approve Petitioner's requested development permits. Our review of the UDO reveals there is no ordinance requiring Petitioner to show it obtained the charter before it can proceed with zoning permits. In fact, the UDO provides only general zoning requirements for all elementary and secondary

schools. The issue of whether Petitioner satisfied the Town's four findings entitling it to the permits, is a separate legal question from whether the operator of the proposed school obtained final approval of its charter under Chapter 115C of the North Carolina General Statutes. Therefore, we cannot conclude, as the Town urges us to, that "the questions originally in controversy" between Petitioner and the Town are moot. *See In re Peoples*, 296 N.C. at 147, 250 S.E.2d at 912. Petitioner seeks our review of the superior court's determination of its development permits. Our decision on the existing controversy would have a "practical effect" on Petitioner's ability to obtain the required development permits; therefore, we hold Petitioner's appeal is not moot and consider the merits of the case. *See Chavez*, 374 N.C. at 467, 843 S.E.2d at 146.

## V.    Standard of Review

¶ 17        Before a case arising from an application for site plan or subdivision approval comes to this Court, "the proceeding in question has been subject to several levels of examination and review." *PHG Asheville, LLC v. City of Asheville*, 374 N.C. 133, 148–49, 839 S.E.2d 755, 765 (2020). The stage at which the application sits determines the standard of review to be utilized by the reviewing body. *See id.* at 149, 839 S.E.2d at 765–66.

¶ 18        Initially, the application for a permit comes before a local governmental board, and the board "must determine whether an applicant has produced competent,

material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of [the requested permit].” *Id.* at 149, 839 S.E.2d at 766 (citation, emphasis, and internal quotation marks omitted). If the applicant satisfies the initial burden of production, the applicant is “*prima facie* . . . entitled to the issuance of the requested permit.” *Id.* at 149, 839 S.E.2d at 766 (internal quotation marks omitted). Where the applicant is entitled to the approval of its application, “any decision to deny the application should be based upon findings *contra* which are supported by competent, material, and substantial evidence appearing in the record . . . .” *Id.* at 149, 839 S.E.2d at 766 (emphasis added and internal quotation marks omitted).

¶ 19        Should an applicant appeal the board’s decision to the superior court by filing a petition for writ of certiorari under N.C. Gen. Stat. § 160D-1402, the superior court’s task of reviewing the application upon issuing a writ includes:

> ensur[ing] that the rights of petitioners have not been prejudiced because the decision-making body’s findings, inferences, conclusions, or decisions were:
>
> (a)        In violation of constitutional provisions, including those protecting procedural due process rights.
>
> (b)        In excess of the statutory authority conferred upon the local government, including preemption, or the authority conferred upon the decision-making board by ordinance.
>
> (c)        Inconsistent with applicable procedures specified by

statute or ordinance.

(d)     Affected by other error of law.

(e)     Unsupported by competent, material, and substantial evidence in view of the entire record.

(f)     Arbitrary or capricious.

N.C. Gen. Stat. § 160D-1402(j)(1)(a)-(f) (2021).

¶ 20     "The proper standard for the superior court's judicial review depends upon the particular issues presented on appeal." *Mann Media, Inc. v. Randolph Cnty. Plan. Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (citations and internal quotation marks omitted).  In the event the "petitioner contends the board's decision was based on an error of law, '*de novo*' review is proper." *Id.* at 13, 565 S.E.2d at 17 (citations omitted and emphasis added).  "Under *de novo* review[,] a reviewing court considers the case anew and may freely substitute its own interpretation of an ordinance for a board['s] conclusions of law." *Morris Commc'ns Corp. v. City of Bessemer*, 365 N.C. 152, 156, 712 S.E.2d 868, 871 (2011) (emphasis added).  "Whether the record contains competent, material, and substantial evidence is a conclusion of law, reviewable *de novo*." N.C. Gen. Stat. § 160D-1402(j)(2) (2021); *see also PHG Asheville*, 374 N.C. at 150–51, 839 S.E.2d at 766–67 (citation omitted).  Our Court has defined "material evidence" as "[e]vidence having some logical connection with the consequential facts or the issues." *Am. Towers, Inc. v. Town of Morrisville*, 222 N.C. App. 638, 642, 731

S.E.2d 698, 702 (2012) (citation omitted), *disc. rev. denied*, 366 N.C. 603, 743 S.E.2d 189. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 642, 731 S.E.2d at 702 (citation omitted).

¶ 21 "In the event that the petitioner contends that the local governmental body's decision was either (1) arbitrary or capricious or (2) not supported by competent, material, or substantial evidence, the superior court is required to conduct a whole record review." *PHG Asheville, LLC*, 374 N.C. at 150–51, 839 S.E.2d at 766–67. Under the whole record test, "the reviewing court must examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by substantial evidence." *Mann Media, Inc.*, 356 N.C. at 14, 565 S.E.2d at 17 (citations and internal quotation marks omitted). In applying "the whole record test, [a] finding must stand unless it is arbitrary [or] capricious." *Id.* at 16, 565 S.E.2d at 19.

¶ 22 When this Court reviews an order of the superior court relating to an agency decision, we examine the order for errors of law in a twofold process: "(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly." *Id.* at 14, 565 S.E.2d at 18.

¶ 23 In this case, it is clear the superior court correctly exercised the *de novo* standard of review in conducting its statutory interpretation of N.C. Gen. Stat. §

160A-307.1 because the court's Order states it proceeded *de novo* on the issue. *See id.* at 14, 565 S.E.2d at 18. For the reasons set forth below, we conclude the trial court properly applied *de novo* review in reaching its decision that N.C. Gen. Stat. § 160A-307.1 does not prohibit municipalities from regulating pedestrian and bicycle connectivity. *See id.* at 14, 565 S.E.2d at 18.

¶ 24    Petitioner contends "[t]he Superior Court erred when it applied whole record review" to the issue of whether the burden of production is met. We agree. The trial court should have "applied *de novo* review to determine the initial legal issue of whether Petitioner had presented competent, material, and substantial evidence." *See PHG Asheville, LLC v. City of Asheville*, 262 N.C. App. 231, 241, 822 S.E.2d 79, 86 (2018), *aff'd*, 374 N.C. 133, 839 S.E.2d 755 (2020). Instead, the trial court erroneously exercised the whole record test in determining the preliminary legal question concerning the sufficiency of Petitioner's evidence. For the reasons discussed below, we nevertheless conclude the trial court correctly affirmed the Board's decisions because Petitioner failed to meet its burden of production to show it is entitled to the requested permits; thus, we find no prejudicial error. *See Cannon v. Zoning Bd. of Adjustment*, 65 N.C. App. 44, 47, 308 S.E.2d 735, 737 (1983) (concluding the petitioner's challenged findings were "a recitation of largely uncontroverted evidence" and therefore the board's decision was not prejudicial error).

## VI.    Analysis

### A. The Town's Local Ordinances "Requiring Sidewalks"

In its first argument, Petitioner contends N.C. Gen. Stat. § 160A-307.1 prohibits "municipalities from requiring or otherwise conditioning approval of school construction on meeting local street improvement requirements," including sidewalk improvement requirements.  The Town asserts the plain text of the statute indicates the legislature's intent to limit a municipality's "ability to require 'street improvements' for schools to only those that are required for safe ingress and egress 'to the municipal street system' and that are physically connected to the school's driveway"; thus, the legislature did not contemplate sidewalks falling within the meaning of a "street improvement."

After careful review, we agree with the Town's interpretation of N.C. Gen. Stat. § 160A-307.1, and we reject Petitioner's contention that sidewalks are included within the meaning of "street improvements" for purposes of interpreting N.C. Gen. Stat. § 160A-307.1.

We review *de novo* the issue of whether N.C. Gen. Stat. § 160A-307.1 was properly interpreted.  *See Mann Media, Inc.*, 356 N.C. at 13, 565 S.E.2d at 17; *see also Quality Built Homes, Inc. v. Town of Carthage*, 369 N.C. 15, 18, 789 S.E.2d 454, 457 (2016) ("We review matters of statutory interpretation de novo . . . .").

N.C. Gen. Stat. § 160A-307.1 provides in pertinent part:

> A city may only require street improvements related to
> schools that are required for safe ingress and egress to the
> municipal street system and that are physically connected
> to a driveway on the school site. The required
> improvements shall not exceed those required pursuant to
> [N.C. Gen. Stat. §] 136-18(29).

N.C. Gen. Stat. § 160A-307.1 (2021).

¶ 29 Petitioner argues the broad definition of "improvements" found under N.C. Gen. Stat. § 136-18(29a) is controlling as to the definition of "street improvements" under N.C. Gen. Stat. § 160A-307.1. Petitioner reasons N.C. Gen. Stat. § 160A-307.1 references "[t]he required improvements" in citing to N.C. Gen. Stat. § 136-18(29). The Town maintains Petitioner's reading of the statute would lead to "absurd results" and "conflict[s] with the plain language of the statute."

¶ 30 "In the interpretation of statutes, the legislative will is the all-important or controlling factor." *In re Hardy*, 294 N.C. 90, 95, 240 S.E.2d 367, 371 (1978). "Statutory interpretation properly begins with an examination of the plain words of the statute." *Jeffries v. Cnty. of Harnett*, 259 N.C. App. 473, 488, 817 S.E.2d 36, 47 (2018) (citation omitted), *disc. rev. denied*, 372 N.C. 297, 826 S.E.2d 710 (2019). When language is "clear and unambiguous within the context of the statute," the courts must give the words their "plain and ordinary meanings." *Brown v. Flowe*, 349 N.C. 520, 522, 507 S.E.2d 894, 896 (1998). "[U]ndefined words in a statute 'must be given their common and ordinary meaning'" when interpreting the plain language. *State*

*v. Rieger*, 267 N.C. App. 647, 649, 833 S.E.2d 699, 701 (2019) (quoting *In re Clayton-Marcus Co., Inc.*, 286 N.C. 215, 219, 210 S.E.2d 199, 202 (1974)). However, "[w]ords and phrases of a statute may not be interpreted out of context, but individual expressions must be construed as a part of the composite whole and must be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit." *In re Hardy*, 294 N.C. at 95–96, 240 S.E.2d at 371–72 (internal quotations omitted). Under the interpretative canon of *noscitur a sociis*, "[w]hen a word used in a statute is ambiguous or vague, its meaning may be made clear and specific by considering the company in which it is found[,] and the meaning of the terms which are associated with it." *Winston v. Beeson*, 135 N.C. 271, 280, 47 S.E. 457, 460 (1904); *see State v. Emery*, 224 N.C. 581, 583, 31 S.E.2d 858, 860 (1944) ("*Noscitur a sociis* is a rule of construction applicable to all written instruments.").

¶ 31    "[S]treet improvements" is not defined in Chapter 160A; thus, we look to the ordinary meaning of the words that comprise the term. *See Rieger*, 267 N.C. App. at 649, 833 S.E.2d at 701. According to Merriam-Webster, a "street" is defined as "a thoroughfare especially in a city, town, or village that is wider than an alley or lane that *usually includes sidewalks*." *Street*, Merriam-Webster, https://www.merriam-webster.com/dictionary/street (last visited June 9, 2022) (emphasis added). An "improvement" means "the act or process of improving." *Improvement*, Merriam-Webster, https://www.merriam-webster.com/dictionary/improvement (last visited

June 9, 2022). "Improve" means "to make (something better)." *Improve*, Merriam-Webster, https://www.merriam-webster.com/dictionary/improve (last visited June 9, 2022).

¶ 32 Applying the ordinary meaning of the word "street" to the statute at issue, the statute would prohibit municipalities from mandating improvements of thoroughfares—and potentially improvements of sidewalks—unless such improvement is "required for safe ingress and egress to the municipal street system and [is] physically connected to a driveway on the school site." *See* N.C. Gen. Stat. § 160A-307.1. We next determine if the language of the statute is "clear and unambiguous" as to whether sidewalks should be included within the ordinary meaning of "street improvements" based on the "context of the statute." *See Brown*, 349 N.C. at 522, 507 S.E.2d at 896; *In re Hardy*, 294 N.C. at 95–96, 240 S.E.2d at 371.

¶ 33 According to Black's Law Dictionary, "ingress" is "[t]he act of entering," and "egress" is "[t]he act of going out or leaving." *Ingress*, Black's Law Dictionary (10th ed. 2014); *egress*, Black's Law Dictionary (10th ed. 2014). In applying the principle of *noscitur a sociis*, we cannot conclude the legislature intended sidewalks to be required for safely entering into, and leaving from, the municipal street system, nor did it intend for cities to require only sidewalks which are "physically connected to a driveway on the school site." *See* N.C. Gen. Stat. § 160A-307.1.

¶ 34 Finally, we consider the other statutory sections of Chapter 160A dealing with

sidewalks, streets, and/or improvements. "[W]e must be guided by the 'fundamental rule of statutory construction that statutes in *pari materia*, and all parts thereof, should be construed together and compared with each other.'" *Martin v. N.C. Dep't Health & Hum. Servs.*, 194 N.C. App. 716, 719, 670 S.E.2d 629, 632 (2009) (emphasis added) (quoting *Redevelopment Comm'n v. Sec. Nat'l Bank*, 252 N.C. 595, 610, 114 S.E.2d 688, 698 (1960)). We have stated "[w]hen a legislative body includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposely in the disparate inclusion or exclusion." *N.C. Dep't of Revenue v. Hudson*, 196 N.C. App. 765, 768, 675 S.E.2d 709, 711 (2009) (internal quotation marks omitted) (quoting *Rodriquez v. United States*, 480 U.S. 522, 525, 107 S. Ct. 1391, 94 L. Ed. 2d 533, 537 (1987).

¶ 35        Petitioner contends the definition of "improvements" found in N.C. Gen. Stat. § 136-18(29a) should "control [in this case] because it comes from a statute that limits the types of roadway improvements that can be imposed on schools by government." N.C. Gen. Stat. § 136-18(29a) provides: "[t]he term 'improvements,' as used in this subdivision, refers to all facilities within the right-of-way required to be installed to satisfy the road cross-section requirements depicted upon the approved plans," including, *inter alia*, roadway construction, ditches and shoulders, and *sidewalks*. N.C. Gen. Stat. § 136-18(29a) (2021). The use of the phrase "as used in this

subdivision," indicates the legislature's intent to restrict this definition of general "improvements" to this particular subsection. Additionally, N.C. Gen. Stat. § 136.18(29), the statute cited in N.C. Gen. Stat. § 160A-307.1, is referring *only to driveway connections*—not sidewalks. Thus, we are not persuaded by Petitioner's argument that we should apply the definition of "improvements" found in N.C. Gen. Stat. § 136-18(29a) to interpret "street improvements" under N.C. Gen. Stat. § 160A-307.1.

¶ 36    Additionally, our review of North Carolina statutes reveals not only has the General Assembly specifically referred to "sidewalks" when it intended to pass laws affecting sidewalks, *see e.g.*, N.C. Gen. Stat. § 160A-296 (2021); N.C. Gen. Stat. § 160A-189 (2021); N.C. Gen. Stat. 160A-300 (2021), but it has also specifically referred to "sidewalk improvements" when it intended to pass laws affecting sidewalk improvements. *See* N.C. Gen. Stat. § 160A-217 (2021).

¶ 37    In passing N.C. Gen. Stat. § 160A-217, the legislature distinguished between "street improvements" and "sidewalk improvements" in the context of levying special assessments for such improvements by using the disjunctive term "or" in separating the phrases "street improvements" and "sidewalk improvements." *See Miller v. Lillich*, 167 N.C. App. 643, 646, 606 S.E.2d 181, 183 (2004) (The legislature's use of the word "or" to separate sub-parts of the statute at issue indicated the sub-parts "should be read disjunctively, each being an alternative to the other."). The General

Assembly's specific use of the terms "street improvements," "sidewalk improvements," and "improvements" in certain sections of Chapter 160A indicates its intent to have the categories separate and distinct from one another. Accordingly, we conclude the term "street improvements" referred to in N.C. Gen. Stat. § 160A-307.1 does not include sidewalk improvements. Therefore, we hold the superior court correctly concluded "N.C. Gen. Stat. § 160A-307.1 does not prohibit towns from regulating pedestrian and bicycle connectivity in relation to proposed new schools."

¶ 38       We briefly discuss the separate concurring and dissenting opinion, which concludes N.C. Gen. Stat. § 160A-307.1 preempts the Town's ordinances requiring sidewalks. The separate opinion correctly considers the plain meaning of the terms "street" and "improvement," then erroneously offers cases that neither interpret the statute at issue nor consider the legislative intent of the statute. Rather, the cases are offered as support for the proposition that streets include sidewalks. Although these cases may appear to support the desired conclusion, their consideration in this context is contrary to the rules regarding statutory interpretation that have been developed by the Courts in this State. *See Blowing Rock v. Gregorie*, 243 N.C. 364, 371, 90 S.E.2d 898, 904 (1956) ("Statutes *in pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each, that is, all applicable laws on the same subject matter should be construed together so as to produce a harmonious body of legislation, if possible.");

*Wal-Mart Stores East v. Hinton*, 197 N.C. App. 30, 41–42, 676 S.E.2d 634, 644 (2009).

**B. Sufficiency of Evidence to Establish *Prima Facie* Case for Entitlement of Permits**

¶ 39    As previously stated, the proper standard of review for the initial legal issue of whether Petitioner had presented competent, material, and substantial evidence is *de novo*.  *See PHG Asheville, LLC*, 262 N.C. App. at 241, 822 S.E.2d at 86.

¶ 40    There is no dispute Petitioner's Applications complied with finding of fact 3 of UDO Sections 15.8.2 and 15.9.2.  Moreover, the superior court concluded Petitioner's Applications complied with finding of fact 4, and the Town does not contest this conclusion.  Thus, only the superior court's rulings as to findings of fact 1 and 2 are relevant to Petitioner's appeal of the Applications.  We consider the sufficiency of evidence for each factual finding in turn.

### 1. *Finding of Fact 1: Conformity with the Town's Plans and Policies*

¶ 41    Finding of fact 1 requires the requested permits are "consistent with the adopted plans and policies of the [T]own."  Here, denial of Petitioner's Applications was based in part on Petitioner's non-compliance with policies S-1 and S-3 of the Town's policies for community-oriented schools.

### a. *Community Plan, Policy S-1*

¶ 42    As stated above, policy S-1 provides:

> ADVANCED PLANNING FOR THE LOCATION OF NEW
> PUBLIC SCHOOLS serving Wake Forest should be a joint
> effort between the Wake County School Board and the

Town. School locations should serve to reinforce desirable growth patterns rather than promoting sprawl. New elementary school locations should be viewed as a cornerstone of the neighborhoods they are intended to serve.

¶ 43 Petitioner argues "N.C. Gen. Stat. § 115C-218.35 prevents the Town from using vague and general policies on school development to prevent the construction of a charter school in a specific location." The Town asserts N.C. Gen. Stat. § 115C-218.35 did not prohibit the Town from denying permit applications related to charter schools. Additionally, the Town explains in its brief that it did not deny the Applications based on Wake Prep's location, and it accepted the permit applications for the location. Rather, the Town admits that it denied the Applications because Petitioner failed "to include adequate sidewalks to satisfy the [T]own's policies and ordinances in contravention of UDO §§ 15.8.2 and 15.9.2 . . . ."

¶ 44 The pertinent part of N.C. Gen. Stat. § 115C-218.35 upon which Petitioner relies provides: "[a] charter school's specific location shall not be prescribed or limited by a local board or other authority except a zoning authority." N.C. Gen. Stat. § 115C-218.35(a) (2021). Because the Board is acting as a zoning authority in this case, Petitioner's argument that this statute prevents the Town from considering Community Plan policies and corresponding regulations is without merit. We next consider whether Petitioner offered sufficient evidence that it complied with the Town's plans and policies.

¶ 45    "A comprehensive plan is a policy statement to be implemented by zoning regulations, and it is the latter that have the force of law. It is generally deemed to be advisory, rather than controlling, and it may be changed at any time." *Piney Mt. Neighborhood Assoc. v. Town of Chapel Hill*, 63 N.C. App. 244, 251, 304 S.E.2d 251, 255 (1983) (citations and internal quotation marks omitted). A board of commissioners "must also proceed under standards, rules, and regulations, uniformly applicable to all who apply for permits." *Application of Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 81 (1970) ("[C]ommissioners cannot deny applicants a permit in their unguided discretion or, stated differently, refuse it solely because, in their view, [it] would 'adversely affect the public interest.'"). "The inclusion of a use in a zoning district, even where a . . . permit is required, establishes a *prima facie* case that the use conforms with the comprehensive plan." *Am. Towers, Inc. v. Town of Morrisville*, 222 N.C. App. 639, 643, 731 S.E.2d 698, 703 (2012) (citing *Woodhouse v. Bd. of Comm'rs*, 299 N.C. 211, 216, 261 S.E.2d 882, 886 (1980)).

¶ 46    Here, policy S-1 is a policy statement applicable to the planning of a new school location. *See Piney Mt. Neighborhood Ass'n*, 63 N.C. App. at 251, 304 S.E.2d at 255. The Town does not argue that policy S-1 was implemented by a zoning regulation, nor does the Town contest that it accepted Petitioner's permit applications for the Property to be the site location for Wake Prep. Therefore, policy S-1 is solely advisory, is irrelevant to Petitioner's Applications, and was not a proper basis for the Board to

deny the Site Plan Application. *See id.* at 251, 304 S.E.2d at 255. Furthermore, an elementary and secondary school is a permitted use within the RD District of the Property with additional supplemental standards; therefore, such an educational use "establishes a *prima facie* case that the use conforms with the comprehensive plan." *See Am. Towers, Inc.*, 222 N.C. App. at 643, 731 S.E.2d at 703.

### b. *Community Plan, Policy S-3*

¶ 47        Policy S-3 provides: "[s]chool campuses shall be designed to allow safe, pedestrian access from adjacent neighborhoods. Transportation facilities within 1.5 miles of all public schools shall be a priority for construction of sidewalks, bike paths and pedestrian trails."

¶ 48        Similar to policy S-1, policy S-3 is a policy of the Town's comprehensive plan to be implemented by a zoning regulation and can be changed at any time. *See Piney Mt. Neighborhood Ass'n*, 63 N.C. App. at 251, 304 S.E.2d at 255. Standing by itself, S-3 is only advisory and does not have the force of law. *See id.* at 251, 304 S.E.2d at 255. However, UDO Section 3.7.5 is an ordinance by which policy S-3 was implemented. Thus, as discussed in detail below, Petitioner's failure to satisfy UDO Section 3.7.5 was a proper basis on which the Town denied Petitioner's applications.

### 2. *Finding of Fact 2: Compliance with Applicable Ordinances*

¶ 49        Finding of fact 2 requires the Applications to "compl[y] with all applicable requirements of this ordinance."

¶ 50        In the instant case, the Town denied Petitioner's Subdivision Plan Application because it did not comply with requirements set forth in UDO Section 3.7.5(A), which requires an applicant for a school to demonstrate how its plan will achieve "walking and bicycle accessibility by schoolchildren to schools" through off-premise sidewalks, multi-use trails or paths, or greenways connecting to existing networks. Similarly, the Town denied Petitioner's Site Plan Application on the ground that Petitioner did not show it met the requirements of UDO Section 3.7.5(B), which requires all schools within the Town's planning jurisdiction to have vehicular and pedestrian connectivity to surrounding residential areas.

¶ 51        Relying on *Lanvale Properties, LLC v. County of Cabarrus*, 366 N.C. 142, 731 S.E.2d 800 (2012), Petitioner contends the Town erred in denying its Subdivision Plan Application on the ground that it failed to comply with UDO Section 3.7.5 because it is a zoning ordinance, and it is inapplicable to its subdivision request. We disagree and note Petitioner makes no argument as to why UDO Section 3.7.5 is inapplicable to its Site Plan Application.

¶ 52        In *Lanvale Properties, LLC*, our Court explained the difference between zoning ordinances and subdivision ordinances:

> [A]s a general matter, subdivision ordinances are designed to regulate the creation of new lots or separate parcels of land. Unlike zoning, which controls the use of land and remains important before, during and after development, subdivision regulation generally refers to controls

> implemented during the development process. To this end, subdivision ordinances have several purposes, including, among other things, facilitat[ing] record keeping regarding land ownership; establishing standards on the size and shape of new lots and the layout of public facilities (such as street location, intersection design, and the like); and requir[ing] the provision of essential infrastructure (such as roads, utilities, recreational lands, and open space) and the details of how [that infrastructure] is to be laid out and constructed. Therefore, county subdivision ordinances control the development of specific parcels of land while general zoning ordinances regulate land use activities over multiple properties located within a distinct area of the county's territorial jurisdiction.

*Lanvale Props., LLC*, 366 N.C. at 158–59, 731 S.E.2d at 812 (citations and internal quotation marks omitted).

¶ 53    In this case, UDO Section 3.7.5 is intended to regulate the development of land to be used for educational uses and requires the provision of "off-premise sidewalks, multi-use trails or paths, or greenways" to allow for accessibility by students to the schools and for vehicular and pedestrian connectivity to surrounding residential areas. *See id.* at 158, 731 S.E.2d at 812. Since the ordinance concerns a component of "essential infrastructure" for an elementary and secondary school within the Town's planning jurisdiction, we conclude UDO Section 3.7.5 is a subdivision ordinance, and the superior court properly considered the ordinance in denying Petitioner's Subdivision Plan Application. *See id.* at 158, 731 S.E.2d at 812.

¶ 54    As discussed in detail in Section A, the Town's UDO Section 3.7.5 was not

preempted by N.C. Gen. Stat. § 160A-307.1, and Petitioner has failed to show that it was not required to comply with UDO Section 3.7.5 to satisfy conditions for approval of the Applications.

¶ 55        The separate concurring and dissenting opinion states "[t]he Town's staff reviewed Petitioner's submittals and submitted a written report.  The Town's written report noted no deficiencies or further improvements needed."  We note the staff report *recommended the Board determine* if Petitioner met the required findings of fact, including determining whether the plan complies with all applicable requirements of the UDO, including UDO Section 3.7.5.  We further note the ultimate decision as to whether Petitioner presented "competent, material, and substantial evidence" and met the UDO requirements remained with the Board.

¶ 56        Our review of the record shows Petitioner brought forth evidence demonstrating it would dedicate a twenty-five-foot right of way line along the frontage of the property and provide a ten-foot-wide multi-use path one foot behind the right of way line.  Petitioner also offered testimony tending to show "the [proposed] sidewalk . . . would align with the entrance into Joyner Park and the trails within Joyner Park."  Since Petitioner demonstrates that it would provide pedestrian connectivity to only one residential neighborhood through Joyner Park located to the south of the proposed school, we hold the superior court did not err in affirming the Board's decision to deny the Applications.

## VII.   Conclusion

We deny the Town's motion to dismiss Petitioner's appeal because the case is not moot.  We hold the Town's local ordinances requiring pedestrian connectivity and accessibility for schoolchildren to a school is not preempted by N.C. Gen. Stat. § 160A-307.1.   Although the superior court erred in applying the whole record test in considering whether Petitioner presented competent, material, and substantial evidence, we find no prejudicial error.  Our *de novo* review of the record reveals Petitioner failed to meet its burden of production to show it met Section 3.7.5 of the Town's UDO to establish a *prima facie* case for entitlement of the permits. Accordingly, we affirm the decision of the superior court.

AFFIRMED.

Judge ARROWOOD concurs.

Judge TYSON concurs in part and dissents in part by separate opinion.

TYSON, Judge, concurring in part and dissenting in part.

¶ 58        I concur with the majority's opinion holding the Town's motion to dismiss as moot be denied. I also agree with the majority's conclusions the superior court erred and applied the incorrect "whole record" standard of review. I further concur with "[the Town's Board] cannot deny applicants a permit in their unguided discretion or, stated differently, refuse it solely because, in their view, [it] would 'adversely affect the public interest.'" "The inclusion of a [permitted] use in a zoning district, even where a special use permit is required, establishes a *prima facie* case the use conforms with the comprehensive plan." *Am. Towers, Inc. v. Town of Morrisville*, 222 N.C. App. 638, 643, 731 S.E.2d 698, 703 (2012) (citing *Woodhouse v. Bd. of Comm'rs*, 299 N.C. 211, 216, 261 S.E.2d 882, 886 (1980)). As such, Petitioner's subdivision application should be approved. The Town found Petitioner complied with all provisions of the applicable subdivision ordinances and future improvements to a parcel are subject to site plan review, and are not reviewed under the subdivision ordinance.

¶ 59        However, the majority incorrectly concludes the superior court's erroneous whole record review was harmless; the Town's UDO can pre-empt a limiting state statute, N.C. Gen. Stat. § 160A-307.1 (2021); and, Petitioner's evidence failed to establish a *prima facie* case of entitlement to the special use permit. I respectfully dissent.

## I.        Issues

¶ 60 Petitioner petitioned for a writ of certiorari pursuant to N.C. Gen. Stat. § 160A-393, recodified as N.C. Gen. Stat. § 160D-1402 (2021). Petitioner argued in its petition: (1) N.C. Gen. Stat. § 160A-307.1 prohibits the Town from denying the Applications for failing to meet the Town's policies requiring school connectivity to adjoining neighborhoods; (2) the Town cannot deny the Subdivision Plan Application because it found the Subdivision Plan Application complied with all provisions of the applicable subdivision ordinances; and, (3) Petitioner presented sufficient evidence to establish it is entitled to the permits, and there was no competent evidence *contra* in the record to support denial.

## II. Standards of Review

¶ 61 "Whether the record contains competent, material, and substantial evidence is a conclusion of law, reviewable de novo." N.C. Gen. Stat. § 160D-1402(j)(2). Petitioner argues no disputed facts exist in this case and the only question is whether it "produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit[.]" *Humble Oil & Ref. Co. v. Bd. of Aldermen*, 284 N.C. 458, 468, 202 S.E.2d 129, 136 (1974).

¶ 62 We all agree the Petitioner correctly argues: "[t]he Superior Court erred when it applied whole record review," to the issue of whether Petitioner's *burden of production* was met, a deferential review to the Town. Our Supreme "Court has

clearly held, the extent to which an applicant has presented competent, material, and substantial evidence tending to satisfy the standards set out in the applicable ordinance" for a quasi-judicial permit "is a question directed toward the sufficiency of the evidence presented by the applicant and involves the making of a legal, rather than a factual, determination." *PHG Asheville, LLC v. City of Asheville*, 374 N.C. 133, 152, 839 S.E.2d 755, 767 (2020).

¶ 63          We all also agree the trial court should have "applied *de novo* review to determine the initial legal issue of whether Petitioner had presented competent, material, and substantial evidence." *PHG Asheville, LLC v. City of Asheville*, 262 N.C. App. 231, 241, 822 S.E.2d 79, 86 (2018), *aff'd*, 374 N.C. 133, 839 S.E.2d 755 (2020). Instead, the trial court erroneously applied the deferential "whole record" test to determine the legal question concerning the sufficiency of Petitioner's evidence. *See id.*

¶ 64          Also, the issue of whether N.C. Gen. Stat. § 160A-307.1 was properly interpreted and applied is reviewed *de novo*. *See Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002); *see also Quality Built Homes, Inc. v. Town of Carthage*, 369 N.C. 15, 18, 789 S.E.2d 454, 457 (2016) ("We review matters of statutory interpretation de novo") (citation omitted).

¶ 65          "The fundamental right to [own and use] property is as old as our state." *Kirby v. N.C. Dep't of Transp.*, 368 N.C. 847, 852, 786 S.E.2d 919, 923 (2016) (citations

omitted). "Public policy has long favored the free and unrestricted use and enjoyment of land. *Id.* at 853, 786 S.E.2d at 924 (citations and internal quotation marks omitted).

¶ 66 "The general rule is that a zoning ordinance, being in derogation of common law property rights, should be construed in favor of the free use of property." *Dobo v. Zoning Bd. of Adjustment of Wilmington*, 149 N.C. App. 701, 712, 562 S.E.2d 108, 115 (2002) (Tyson, J., dissenting), *rev'd per curiam for reasons stated in the dissenting opinion*, 356 N.C. 656, 576 S.E.2d 324 (2003); *See Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966); *City of Sanford v. Dandy Signs, Inc.*, 62 N.C. App. 568, 569, 303 S.E.2d 228, 230 (1983); *Innovative 55, LLC v. Robeson Cty.*, 253 N.C. App. 714, 720, 801 S.E.2d 671, 676 (2017).

> **Zoning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which is not clearly their express terms.** It has been held that well-founded doubts as to the meaning of obscure provisions of a Zoning Ordinance should be resolved in favor of the free use of property.

¶ 67 *Land v. Village of Wesley Chapel*, 206 N.C. App. 123, 131, 697 S.E.2d 458, 463 (2010) (emphasis original)(citations omitted). The Town's restrictive ordinances are to be construed narrowly and their applicability is limited and pre-empted by a state statute, which addresses and controls the very issue of the interior sidewalk improvements. N.C. Gen. Stat. § 160A-307.1.

### III.    Sufficiency of Evidence to Establish a *Prima Facie* Case

¶ 68    The Petitioner's *burden of production* at a use permit hearing is well established: "[W]hether the applicant for a conditional use permit made out the necessary *prima facie* case does not involve determining whether the applicant met a burden of persuasion, as compared to a burden of production, and is subject to *de novo*, rather than whole record, review during the judicial review process." *PHG Asheville, LLC*, 374 N.C. at 153 n5, 839 S.E.2d at 768 n5. Under *de novo* review, the question is whether Petitioner "produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a [use] permit." *Id.* at 149, 839 S.E.2d at 766 (citation omitted).

¶ 69    "In the event that the applicant satisfies this initial burden of production, then 'prima facie he is entitled to' the issuance of the requested permit." *Id.* (internal citation omitted). The Supreme Court has analogized the applicant's burden of production in these cases "to the making of the showing necessary to overcome a directed verdict motion during a jury trial." *Id* at 152, 839 S.E.2d at 767. In cases where facts are not in dispute, "the City simply lack[s] the legal authority to deny," if an applicant produces "competent, material, and substantial evidence" on each of the relevant standards for approval. *Id*. at 158, 839 S.E.2d at 771; *Id*. at 145, 839 S.E.2d at 763.

¶ 70        Petitioner correctly argues the Town cannot deny the Subdivision Plan Application because the evidence supports and the Town found: (1) the Subdivision Plan Application complied with all provisions of the applicable subdivision ordinances; (2) it presented sufficient evidence to establish it is entitled to the permits; and, (3) no competent evidence *contra* in the record supports denial.

¶ 71        Also, no party disputes Petitioner's Applications complied with finding of fact 3 of UDO §§ 15.8.2 and 15.9.2. As noted above, the superior court concluded Petitioner's Applications also complied with finding of fact 4. The Town does not contest this conclusion on appeal. Thus, only factors 1 and 2 are at issue.

¶ 72        The Town, the superior court, and the majority's opinion incorrectly weighs the evidence Petitioner produced in determining whether competent, material, and substantial evidence was submitted. The RD Zoning District applicable to the Property unambiguously states an elementary and secondary school is *a permitted use*, with additional supplemental standards. This permitted educational use "establishes a *prima facie* case that the use conforms with the comprehensive plan." *See Am. Towers, Inc.*, 222 N.C. App. at 643, 731 S.E.2d at 703 (citation omitted).

¶ 73        The majority's opinion correctly concludes S-1 is a non-binding policy statement not applicable or controlling to Petitioner's applications. *See Piney Mt. Neighborhood Ass'n v. Town of Chapel Hill*, 63 N.C. App. 244, 251, 304 S.E.2d 251, 255 (1983). The majority's opinion also correctly notes the Town does not argue on

appeal that policy S-1 was implemented by a zoning regulation, nor does the Town contest it accepted Petitioner's permit applications for the Property as a permitted use to be the site location for an educational facility, Wake Prep, and not as a re-zoning application. S-1 is solely advisory, irrelevant to Petitioner's Applications, and was an improper basis for the Board to deny the Site Plan Application. *See id.* We all agree this basis neither supports the Board's denial of Petitioner's applications nor the superior court's affirmance thereof.

¶ 74 Petitioner contends the Town erred in denying its Subdivision Plan Application on the ground it failed to comply with UDO Section 3.7.5 because it is a zoning ordinance, and it is inapplicable to its subdivision request. The majority's opinion improperly conflates the separate and distinct functions of subdivision and zoning ordinances.

¶ 75 Our Supreme Court in *Lanvale Properties, LLC*, sets out the differences between and in interpreting zoning ordinances and subdivision ordinances:

> [A]s a general matter, **subdivision ordinances are designed to regulate the creation of new lots or separate parcels** of land. Unlike **zoning, which controls the use of land** and remains important before, during and after development, subdivision regulation generally refers to controls implemented during the development process. **To this end, subdivision ordinances have several purposes, including among other things, facilitat[ing] record keeping regarding land ownership; establishing standards on the size and shape of new lots and the layout of public facilities (such as street location, intersection**

**design, and the like); and requir[ing] the provision of essential infrastructure (such as roads, utilities, recreational lands, and open space) and the details of how [that infrastructure] is to be laid out and constructed.** Therefore, county **subdivision ordinances control the development of specific parcels of land while general zoning ordinances regulate land use activities over multiple properties located within a distinct area** of the county's territorial jurisdiction.

*Lanvale Props., LLC v. Cnty. Of Cabarrus*, 366 N.C. 142, 158-59, 731 S.E.2d 800, 812 (2012) (citations and internal quotation marks omitted) (emphasis supplied).

¶ 76    In this case, the plain language of the Town's UDO contains the word "development" in addition to prescribing policy goals for "adequate infrastructure (transportation and utilities)" and "development of adjacent properties or other neighborhood uses." The intended regulation of the "development" of land to be used for educational uses requires the provision of "off-premise sidewalks, multi-use trails or paths, or greenways" to allow for accessibility by students to the schools and for vehicular and pedestrian connectivity to surrounding residential areas." *Id.* at 158, 731 S.E.2d at 812. Since the ordinance concerns a component of "essential infrastructure" relating to "transportation and utilities" for an elementary and secondary school within the Town's planning jurisdiction, the Town and the superior court erred in denying Petitioner's Applications. *See id.*

¶ 77    Under this standard, Petitioner clearly produced competent, material, and substantial evidence sufficient of a *prima facie* showing of entitlement to the

respective permits. Petitioner's evidence proffers to build a ten-foot-wide multi-use path along the front of the property, inside the public right of way. The Town's staff reviewed Petitioner's submittals and submitted a written report. The Town's written report noted no deficiencies or further improvements needed. No competent testimony nor evidence *contra* was offered to challenge Petitioner's evidence or this report. While none of the Town's commissioners stated UDO 3.7.5 was relevant to the overall decision, Petitioner still offered competent, material, and substantial evidence to meet those requirements by showing this multi-use path would be for pedestrians and cyclists to use as a public sidewalk and path to a neighborhood located at the property's southern point.

¶ 78        The Commissioners violated their oath to be an impartial decision maker in a quasi-judicial proceeding. The decision must be based solely on the evidence presented. The Board ignored the evidence and merely substituted their subjective and unqualified hunches and notions to place an unlawful burden of persuasion upon Petitioner. This they cannot lawfully do. A "necessary *prima facie* case does not involve determining whether the applicant met a burden of persuasion, as compared to a burden of production, and is subject to *de novo*, rather than whole record, review during the judicial review process." *PHG Asheville, LLC*, 374 N.C. at 153 n5, 839 S.E.2d at 768 n5.

¶ 79        In addition to the Town staff's testimony and report, Petitioner's permit

requests met Town ordinances at the quasi-judicial hearing. Nine witnesses, three of which qualified and were received as experts, testified for Petitioner at the Town's public hearing. No one from the Town or any opponents presented any evidence of noncompliance with any of the Town's ordinances or policies. This evidence clearly satisfied Petitioner's burden of production at a quasi-judicial hearing to be issued the special use permit.

¶ 80 Regarding Petitioner's permit applications and the additional internal sidewalks, the Town's Mayor stated, "it's not just that we can't require it, it's that we cannot deny it because [of a lack of sidewalks]." The Town's attorney affirmed this statement. Petitioner provided competent evidence to show their application met all requirements for approval.

¶ 81 The Town had accepted and affirmed Petitioner's findings in its own set of hearings on the issue. The Town offers no lawful basis to deny, and its Commissioners were sworn to be impartial and to base their decision solely on the record evidence, rather than their personal preferences or unsupported allegations. *Id.* "[C]ommissioners cannot deny applicants a permit in their unguided discretion or, stated differently, refuse it solely because, in their view, [it] would 'adversely affect the public interest.'" *In re Application of Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 81 (1970).

¶ 82 Petitioner argues "N.C. Gen. Stat. § 115C-218.35 prevents the Town from using

vague and general policies on school development to prevent the construction of a [public] charter school in a specific location." The Town admits it denied the Applications solely because Petitioner failed "to include adequate sidewalks to satisfy the [T]own[']s policies and ordinances in contravention of UDO §§ 15.8.2 and 15.9.2[.]"

¶ 83 The Town's quasi-judicial hearing "must also proceed under standards, rules, and regulations, uniformly applicable to all who apply for permits." *Id.* The Town's decision must be based solely upon the evidence presented at the hearing, by an impartial decision maker, and any decision maker's bias, personal and subjective policy preferences are immaterial, are not evidence *contra,* and cannot support denial. *Id.* ("[C]ommissioners cannot deny applicants a permit in their unguided discretion or, . . . , refuse it solely because, . . . , [it] would 'adversely affect the public interest.'").

¶ 84 "The inclusion of a [permitted] use in a zoning district, even where a . . . permit is required, establishes a *prima facie* case that the use conforms with the comprehensive plan." *Am. Towers, Inc.*, 222 N.C. App. at 643, 731 S.E.2d at 703 (citing *Woodhouse v. Bd. of Comm'rs*, 299 N.C. 211, 216, 261 S.E.2d 882, 886 (1980)). This prior legislative finding is binding upon the Town and is not subject to review by the city, town, or the superior court during a quasi-judicial special use permit hearing or review. *Id.*

¶ 85 Here, an elementary and secondary school is a permitted use within the RD District of the Property with supplemental permit standards. Such educational uses

as a permitted use in the RD District "establishes a *prima facie* case that the use conforms with the comprehensive plan" to satisfy that factor. *Id.*

Again, we all agree policy S-1 is only a policy statement applicable to the planning of a new school location. *See Piney Mt. Neighborhood Ass'n*, 63 N.C. App. at 251, 304 S.E.2d at 255. The Town does not argue policy S-1 was implemented by a zoning regulation, nor does the Town contest that it accepted Petitioner's permit applications for the Property as currently zoned, to be the new school site location for Wake Prep. Petitioner's Applications do not seek a rezoning of the Property.

Policy S-1 is solely advisory and is irrelevant to Petitioner's Applications and the Town's and superior court's reliance thereon is not a lawful basis to deny the Site Plan Application. *See id.*; s*ee C.C. & J. Enter., Inc. v. City of Asheville*, 132 N.C. App. 550, 553, 512 S.E.2d 766, 769, *disc. review improvidently allowed*, 351 N.C. 97, 521 S.E.2d 117 (1999) (speculative assertions or mere expression of opinion about the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body); *Jackson v. Guilford Cnty. Bd. of Adjustment*, 275 N.C. 155, 164-65, 166 S.E.2d 78, 84-85 (1969) (the legislature may only confer upon a subordinate agency the authority or discretion to execute a law if adequate guiding standards are laid down).

### 1. Community Plan, Policy S-3

Policy S-3 provides: "[s]chool campuses shall be designed to allow safe,

pedestrian access from adjacent neighborhoods. Transportation facilities within 1.5 miles of all public schools shall be a priority for construction of sidewalks, bike paths and pedestrian trails."

¶ 89        Similar to our analysis and conclusions of policy S-1, policy S-3 is also a policy of the Town's comprehensive plan, is not an ordinance, and can be changed at any time. *See Piney Mt. Neighborhood Ass'n*, 63 N.C. App. at 251, 304 S.E.2d at 255. Standing by itself, policy S-3 is only advisory and has no force of law. *See id.*

¶ 90        Petitioner's site plan in evidence demonstrates it would dedicate a twenty-five-foot right of way line along the frontage of the property and provide a ten-foot-wide multi-use path one foot behind the right of way line. Petitioner also offered unchallenged expert testimony tending to show "the [proposed] sidewalk . . . would align with the entrance into Joyner Park and the trails within Joyner Park." The Town's local ordinances requiring pedestrian connectivity and accessibility for schoolchildren to a school is clearly pre-empted by N.C. Gen. Stat. § 160A-307.1.

¶ 91        We all agree the superior court erred in applying the whole record test in considering whether Petitioner presented competent, material, and substantial evidence. No competent, material, and substantial evidence *contra* rebuts Petitioner's *prima facie* showing. Upon *de novo* review Petitioner clearly met its burden of *production* to show its compliance with § 3.7.5 of the Town's UDO to establish a *prima facie* case for entitlement of the permits.

¶ 92 Upon *de novo* review of the order, as is required by statute and well-established Supreme Court precedents, the superior court erred when it applied whole record review and affirmed the Board's decision. The decision was prejudicial and not harmless. Petitioner clearly produced competent, material, and substantial evidence to make a *prima facie* showing of entitlement to the respective permits. The Town's and the superior court's reliance on this non-ordinance to deny Petitioner's permit was unlawful and is properly reversed.

### IV. N.C. Gen. Stat. § 160A-307.1 Pre-emption

¶ 93 "Notwithstanding any provision of this Chapter to the contrary, a *city may not condition the approval of* any zoning, rezoning, or *permit request on the waiver or reduction of* any provision of this section." N.C. Gen. Stat. § 160A-307.1 (emphasis supplied). Petitioner contends N.C. Gen. Stat. § 160A-307.1 prohibits "municipalities from requiring or otherwise conditioning approval of school construction on meeting local street improvement requirements," including sidewalk improvement requirements. The language of the statute is clear, and no party asserts it contains any ambiguity. *Id.*

¶ 94 The analysis of whether Petitioner met the requirements of the Town's UDO is subject to and must be reviewed under N.C. Gen. Stat. § 160A-307.1, which pre-empts and controls this issue. The Town is statutorily barred from withholding or conditioning the issuance of permits based upon "an out-and-out plan of extortion" or

other interior site improvements. *Nollan v. California Coastal Comm.*, 483 U.S. 825, 837, 97 L. Ed. 2d 677, 689 (1987).

N.C. Gen. Stat. § 160A-307.1 provides in pertinent part:

> A city *may only require* street improvements related to schools that are required for safe ingress and egress *to the municipal street system and that are physically connected to a driveway on the school site.* The required improvements shall not exceed those required pursuant to [N.C. Gen. Stat. §] 136-18(29).

N.C. Gen. Stat. § 160A-307.1 (emphasis supplied).

Petitioner correctly asserts the plain text of the statute indicates the legislature's intent to pre-empt and limit a municipality's "ability to require 'street improvements' for schools to only those which are required for safe ingress and egress 'to the municipal street system' and are physically connected to the school's driveway."

## A. Definitions

Petitioner asserts the inclusion of the broad definition of "improvements" found under N.C. Gen. Stat. § 136-18(29a) controls the definition of "street improvements" under N.C. Gen. Stat. § 160A-307.1. Petitioner reasons N.C. Gen. Stat. § 160A-307.1 specifically references "[t]he required improvements" in citing "improvements shall not exceed those required" in N.C. Gen. Stat. § 136-18(29). N.C. Gen. Stat. § 160A-307.1.

N.C. Gen. Stat. § 136-18(29a) provides: "[t]he term 'improvements,' as used in

this subdivision, refers to *all facilities within the right-of-way* required to be installed to satisfy the road cross-section requirements depicted upon the approved plans," including, *inter alia*, roadway construction, ditches and shoulders, and *sidewalks*. N.C. Gen. Stat. § 136-18(29a) (2021) (emphasis supplied).

¶ 99        Petitioner contends the definition of "improvements" used in N.C. Gen. Stat. § 136-18(29a) "controls [in this case] because it comes from a statute that limits the types of roadway improvements that can be imposed on schools by government."

¶ 100       The use of the phrase "as used in this subdivision," clearly indicates the legislature's intent to restrict this definition of general "improvements" to this subsection.  Additionally, N.C. Gen. Stat. § 136-18(29), the statute cited in N.C. Gen. Stat. § 160A-307.1, is referring *only to driveway connections*—not sidewalks.

¶ 101       The statute also contains the express limitation  a city "may only require street improvements . . . [which] are required for safe ingress and egress to the municipal street system *and* that are physically connected to a driveway on the school site." N.C. Gen. Stat. § 160A-307.1 (2021) (emphasis supplied).  By its own terms, the statute limits internal on-site improvements such as sidewalks, bike paths, trails, etc. to link a school campus to surrounding neighborhood.

¶ 102       The Town cannot require more as a condition of development approval unless they are "required for safe ingress and egress to the municipal street system and that are physically connected to a driveway on the school site." *Id.*  This limiting language

of the statute could not be plainer.

¶ 103        While "street improvements" are not defined in Chapter 160A, the ordinary meaning of the words are used that comprise the term. *See State v. Rieger*, 267 N.C. App. 647, 649, 833 S.E.2d 699, 701 (2019). According to The American Heritage College Dictionary, a "street" is defined as "a public way or thoroughfare in a city or town, *usu[ally] with a sidewalk or sidewalks*." *Street*, The American Heritage College Dictionary (3d ed. 1993) (emphasis supplied). An "improvement" is defined as "the act or process of improving." *Improvement*, The American Heritage College Dictionary (3d ed. 1993). "Improve" means "to . . . make better." *Improve*, The American Heritage College Dictionary (3d ed. 1993).

## B. Application

¶ 104        Applying the ordinary meaning of the word "street" to the statute at issue, "[a] city may only require street improvements" of thoroughfares—and potentially improvements of sidewalks solely as "required for safe ingress and egress to the municipal street system and [is] physically connected to a driveway on the school site." N.C. Gen. Stat. § 160A-307.1. Presuming N.C. Gen. Stat. § 160A-307.1 was ambiguous and requires statutory interpretation, the inclusion of the word "street" in the statute includes sidewalks.

¶ 105        For more than a century, our appellate courts have held the "street" includes sidewalks. *See Willis v. New Bern*, 191 N.C. 507, 510, 132 S.E. 286, 287 (1926) ("[A]

street includes the roadway . . . and sidewalks."); *see also Hester v. Durham Traction Co.,* 138 N.C. 288, 291, 50 S.E. 711, 713 (1905) ("The rights, powers, and liability of the municipality extend equally to the sidewalk as to the roadway, for both are parts of the street."); *see also State v. Mabe*, 85 N.C. App. 500, 503, 355 S.E.2d 186, 188 (1987)(citation omitted) ("By way of analogy, courts have universally held that a 'street' includes not only the roadway and travelled portions but also the sidewalks.").

## C. Contradiction with Town Ordinances

¶ 106      The Town's and the superior court's position not only contradicts § 160A-307.1, it contradicts its own ordinance enforcement, which treats sidewalks as "street improvements."

¶ 107      To prevent municipalities from attempting to evade the restrictions of § 160A-307.1 by narrowly defining what constitutes "street improvements" in their jurisdictions, the legislature provided such "improvements" include "all facilities within the right-of-way required to be installed to satisfy the road cross-section requirements" of the local government.  N.C. Gen. Stat. § 136-18(29a).

¶ 108      In this case, "sidewalks" are included by name in the facilities the Town's ordinances require to be installed in the street improvements right-of-way.  The inclusion of sidewalks within the required "street improvements" is expressly illustrated in the Town's staff report on Petitioner's Applications and its opinion of Petitioner's compliance therewith.

The Town's ordinances state sidewalks are "required street improvements." UDO § 6.6.2(E). The Town's arguments and the majority opinion's conclusion that the UDO requires more and can exceed and violate the express limitations in the statute are wholly without merit. N.C. Gen. Stat. § 160A-307.1 bars the Town from extorting and conditioning approval of Petitioner's special use permit and a subdivision application on such further internal site improvements. The Town's arguments are without merit.

## V. Conclusion

We all agree the Town's motion to dismiss Petitioner's appeal is properly denied because the issues presented on appeal are not moot. We also agree the superior court erred in applying the whole record test in considering whether Petitioner produced competent, material, and substantial evidence. Plan policies are not ordinances, do not have the force of law, and are not competent evidence *contra* to defeat a *prima facie* case to support denial of a use permit. There is no dispute Petitioner satisfied two of the required findings and the Town does not argue otherwise. I fully concur with the majority's opinion on these conclusions.

When properly reviewed narrowly and construed in favor of the free use of private property, I disagree a *de novo* review of the record reveals Petitioner failed to meet its *burden of production* to show compliance with § 3.7.5 of the Town's UDO and N.C. Gen. Stat. § 160A-307.1. As the Mayor and Town attorney agreed and advised

the other Commissioners, Petitioner clearly met its burden of *production* at the quasi-judicial hearing before impartial decision makers and, with no evidence in the record *contra,* established a *prima facie* case for entitlement to the permits.

¶ 112        I also disagree with the majority's notion N.C. Gen. Stat. § 160A-307.1 does not pre-empt the Town's non-ordinance policy statements from requiring further internal pedestrian improvements beyond those specified in the statute.

¶ 113        Under de novo review, the order is affected by prejudicial errors, is properly vacated in its entirety, and remanded to the superior court with instructions to order the Town to issue Petitioner's permits. I concur in part and respectfully dissent in part.